# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

LUMINATI NETWORKS LTD.

          Plaintiff,

     v.

NETNUT LTD.

          Defendant.

Case No.

**JURY TRIAL DEMANDED**

## COMPLAINT FOR PATENT INFRINGEMENT

Plaintiff, Luminati Networks Ltd. ("Luminati" or "Plaintiff") brings this action under the patent laws of the United States, Title 35 of the United States Code, and makes the following allegations against NetNut Ltd. ("NetNut"):

## THE PARTIES

1.      Plaintiff Luminati is an Israeli company having a principal place of business at 3 Hamahshev St., Netanya 42507, ISRAEL.

**2.**      Upon information and belief, Defendant NetNut is an Israeli company located at HaArba'a St 30, Tel Aviv, Israel.

## JURISDICTION AND VENUE

3.      This is an action for patent infringement under the patent laws of the United States of America, 35 U.S.C. § 1, *et seq*.

4.      This Court has jurisdiction over the subject matter of this action under 28 U.S.C. §§ 1331, 1338, and 1367.

5.     This Court has personal jurisdiction over NetNut because it, directly or through its subsidiaries, divisions, groups, or distributors, has sufficient minimum contacts with this forum as a result of business conducted within the State of Texas, and/or pursuant to Fed. R. Civ. P. 4(k)(2). On information and belief, NetNut transacts substantial business in the State of Texas, directly or through agents, including: (i) at least a portion of the infringement alleged herein, and (ii) regularly does or solicits business in Texas, engages in other persistent courses of conduct, maintains continuous and systematic contacts within this Judicial District, purposefully avails itself of the privilege of doing business in Texas, and/or derives substantial revenue from services provided in Texas.  For example, Defendant advertises its proxy servers as located throughout the world, including the United States and upon information and belief has customers and servers located in Texas which implement at least a portion of the infringement herein.

6.     Upon information and belief, Defendant's servers that provide the functionality performing steps resulting in infringement alleged herein are located throughout the United States, including upon information and belief in Texas, such as the server providing as a non-limiting example the IP address of 104.245.75.95 from Amarillo Wireless.  *See e.g.* https://www.stupidproxy.com/netnut/.  Defendant touts the ability to select IP addresses by location based on city in the United States.  Upon information and belief, this includes cities in Texas, where the data center servers are located.

## Can I select an IP per city?                                    +

Yes, NetNut offers US city & state proxy selection.

https://netnut.io/faq

| IPs of Rotating Proxy | Hostname/IP | ISP/ASN | Country | Type |
|---|---|---|---|---|
| NetNut Proxies ISP Test | Details of the ISP Test | | | |
| 198.31.50.197 | 198.31.50.197 | AS22549 – TBDSL-01 | United States | Good IP (residential or business) |
| 72.11.14.4 | 72.11.14.4 | AS13638 – METALINK | United States | Good IP (residential or business) |
| 154.84.191.246 | 154.84.191.246 | AS14333 – ON-RAMP-INDIANA | United States | Good IP (residential or business) |
| 154.84.191.186 | 154.84.191.186 | AS14333 – ON-RAMP-INDIANA | United States | Good IP (residential or business) |
| 104.245.75.90 | amw-104-245-75-90.amarillowireless.net | AS63296 – AMARILLO-WIRELESS | United States | Good IP (residential or business) |

https://www.stupidproxy.com/netnut/

7.     This Court has general jurisdiction over Defendant due to its continuous and systematic contacts with the State of Texas and this jurisdiction.  Further, Defendant is subject to this Court's jurisdiction because Defendant committed patent infringement in the State of Texas and this jurisdiction.

8.     Following *Brunette Machine Works v. Kockum Industries, Inc.*, 406 U.S. 706 1972), venue is proper in this Court pursuant to 28 U.S.C. §§ 1391 and 1400(b) at least because, upon information and belief, Defendant is a foreign entity.

### FACTUAL ALLEGATIONS

9.     Derry Shribman and Ofer Vilenski are the sole inventors of a number of patents, including U.S. Patent Nos. 10,484,511 (Exhibit A, "'511 Patent") or "Asserted Patent") issued on November 19, 2019 and 10,637,968 (Exhibit B, "'968 Patent," collectively "Asserted Patents") issued on April 28, 2020.  The Asserted Patents claim priority to provisional application no. 61/249,624 filed on October 8, 2009.

10.   Luminati identifies its patents on its website at https://luminati.io/patent-marking#system-and-method-for-streaming-content-from-multiple-servers.   Luminati is the assignee of the Asserted Patents.

11.   Luminati, formerly known as Hola Networks Ltd. ("Hola"), provides multiple proxy services including a data center proxy service and a residential proxy service.

12.   Upon information and belief, "NetNut" is the brand name for Defendant's proxy business generally, including but not limited to what Defendant refers to as its residential proxy network ("Proxy Service"), which relies upon static residential IP addresses made available through Defendant's servers:

# **Residential IP** Features

 ### Static Residential IP
Direct ISP connectivity provides 24/7 IP availability. Keep your web sessions for as long as you need with Static IPs.

 ### Fastest in the market
NetNut provides one-hop ISP connectivity with no dependency on an end user. Direct ISP connectivity brings faster proxy speeds.

 ### Gather any data
Whether your use case is SEO, Social, ad verification, price comparison or brand protection, NetNut can handle any target.

 ### Rotating Proxies
NetNut rotates proxies per each browser session by default and can be seamlessly integrated into any browser.

 ### Dedicated Private Pools
Fully optimized private proxy pools based on your target to ensure highest success rates at the maximum speed.

 ### API for Stats
Along with the dashboard access, all usage statistics are available in near realtime for retrieval via a simple API.

https://netnut.io/#

13.   Upon information and belief, Defendant's Proxy Service is a web data extraction product and service under the NetNut brand. https://netnut.io/# (Exhibit C).  Defendant touts their Proxy Service as offering "premium static IPs" through "one-hop ISP connectively with no dependency on an end user," meaning upon information and belief that Defendant's servers have

access to a list of proxy IP addresses allowing its servers to use these addresses.  *Id*.  Defendant further touts that all its "servers are located on major internet routes or at ISP network connectivity points that are completely controlled by NetNut." *Id*.  Defendant further touts that its Proxy Service customers can select IP addresses located in the United States as well as specific cities in the United States.  https://netnut.io/faq (Exhibit D).  Upon information and belief, the Proxy Service is used to access content such as webpages, audio and video content over the Internet, wherein that content is stored on a webserver and identified by a Uniform Resource Locator (URL).



## Speed

NetNut's architecture is unique in its ability to provide residential proxies with one hop connectivity. The traffic is not routed through end users' devices so there is no bottleneck in the traffic flow.

https://netnut.io/#



## Stability

All traffic is routed exclusively through the NetNut network; no third party computers are utilized. As a result, there won't be any disconnections or interruptions in the proxy network.

https://netnut.io/#



## Quality

NetNut guarantees the quality of its service, as all the servers are located on major internet routes or at ISP network connectivity points that are completely controlled by NetNut.

https://netnut.io/#

### How is NetNut different from other providers?

While other providers are using a peer to peer (P2P) networks, the NetNut service depends on the unique position and location of DiViNetworks' existing data delivery and network management solutions. DiViNetworks provides services to over 100 ISPs from tens of point of presence (PoPs) around the world. DiViNetworks has created a global proxy technology and network where hundreds of servers are managed by the company and located in different ISPs worldwide. In addition, the network has the ability to manage 100's of Gbit/sec of network traffic, allowing any customer to access content and data from any web source. The result is a highly secure and scalable managed network with unprecedented availability. DiViNetworks is a world leader in the data delivery network field; with the right architecture on your side, you can achieve a failure rate of less than 1%.

https://netnut.io/#

### How can I select an IP per country?                                    +

The country codes have the standard ISO coding. To select specific country please change the proxy URL for example: US.netnut.io, Fl.netnut.io, etc.

https://netnut.io/faq

### Can I select an IP per city?                                    +

Yes, NetNut offers US city & state proxy selection.

https://netnut.io/faq

## What information should I send to Netnut when I report an issue?   −

To report an issue, provide us with:

- Code snippets
- The platform you are using
- Your programming language
- Logs and HTTP dumps if available (we request that you remove your trade secrets, including URLs and any other internal information from your code, dumps, and any other information you provide to Netnut)

Email this information together with your issue to support@netnut.io

https://netnut.io/faq



https://www.sec.gov/Archives/edgar/data/1725332/000121390020008198/f20f2019_safetgroup.htm

Upon information and belief, the Proxy Service includes servers located in Texas.

7

14.     Defendant provides a Proxy Service through the Accused Instrumentalities allowing a NetNut service customer to utilize servers in fetching content over the Internet. https://netnut.io/#.  Upon information and belief, Defendant's code installed on the servers cause them to perform the steps of at least claims 1, 14, 17, 20, 21, 22, 25, 27, 28, 29 and 30 of the '511 Patent.  This code is under the control of Defendant, either directly or via Defendant's contractual relationship with its partners.  As this code is under the control of Defendant, Defendant causes each of these steps to also be performed.  In addition, given Defendant's contractual relationship with its customers, the customers utilization of the Accused Instrumentalities also causes each of the claimed steps to be performed.  Upon information and belief, client devices, including those controlled by Defendant's customers, can use the Accused Instrumentalities to fetch content over the Internet by sending a query to have a server of the Accused Instrumentalities perform the claimed methods. Upon information and belief, this query can comprise a URL corresponding with a webpage, audio and/or video content stored on a web server.

## How is NetNut different from other providers?

While other providers are using a peer to peer (P2P) networks, the NetNut service depends on the unique position and location of DiViNetworks' existing data delivery and network management solutions. DiViNetworks provides services to over 100 ISPs from tens of point of presence (PoPs) around the world. DiViNetworks has created a global proxy technology and network where hundreds of servers are managed by the company and located in different ISPs worldwide. In addition, the network has the ability to manage 100's of Gbit/sec of network traffic, allowing any customer to access content and data from any web source. The result is a highly secure and scalable managed network with unprecedented availability. DiviNetworks is a world leader in the data delivery network field; with the right architecture on your side, you can achieve a failure rate of less than 1%.

https://netnut.io/#



## Quality

NetNut guarantees the quality of its service, as all the servers are located on major internet routes or at ISP network connectivity points that are completely controlled by NetNut.

https://netnut.io/#

15.     Upon information and belief, the NetNut Proxy Service network of the Accused Instrumentalities is based upon a large number of servers located around the World, including in the United States.  *See e.g.* https://netnut.io/#.  Upon information and belief, the Proxy Service servers store a group of IP addresses as shown below.  Upon information and belief, upon receiving a request for content from a client device, a server of the Accused Instrumentalities can select an IP address from the group of addresses for sending the request to a web server.

---

**PROXY SETUP**

NetNut's static residential proxies use backconnect servers. This means that instead of a proxy list, you get one address that accesses the provider's proxy pool and automatically rotates IPs in the back end. NetNut has special addresses for Google, Instagram, and sneaker sites.

If you want a sticky IP, simply change the port number. You can add special parameters to restrict the IPs to specific a country or city.

---

https://proxyway.com/reviews/netnut-proxies

## How can I select an IP per country?                                    +

The country codes have the standard ISO coding. To select specific country please change the proxy
URL for example: US.netnut.io, Fl.netnut.io, etc.

https://netnut.io/faq

## Can I select an IP per city?                                           +

Yes, NetNut offers US city & state proxy selection.

https://netnut.io/faq

16.     Upon information and belief, as shown above, in fetching content by the client
device, the NetNut server performs a method that comprises the steps of (a) receiving, from the
client device, a content identifier; (b) selecting, in response to the receiving of the content identifier
from the first client device, an IP address from a group; (c) sending, in response to the selecting,
the content identifier to the web server using the selected IP address; (d) receiving, in response to
the sending, the content from a web server; and (e) sending the received content to the client
device.   The content identifier comprises a Uniform Resource Locator (URL) and the content
comprises a web-page, audio or video content.

17.     Upon information and belief, as discussed above, the selecting by the server of the
Accused Instrumentalities may be done by a criterion, such as, as non-limiting examples, IP usage,
location of the IP address, or the intended target web server.

## Why is NetNut faster than other proxy solutions?   –

NetNut has a built-in smart IP rotation management layer. Each request you
make goes to one of our super proxies (load balancing servers), which then
provide you with the IP address that is most likely to be available in the
requested location. The t proxy allows for an unlimited number of concurrent
sessions and has an extremely high success rate. To speed up NetNut use, it
is advisable to initiate as many concurrent sessions as required. Using
NetNut and the right architecture, you will outperform any other solution.

https://netnut.io/faq

18.     Upon information and belief, the client device may be addressed by an IP address,

which can be stored on the server, as shown in the below example regarding whitelisting.

## How do I handle a 407 error message (Proxy authentication required)?   –

Encountering a 407 error message means that the client must first authenticate itself with the
proxy. Resolving this issue requires adding the requested IPs, which are now refused connection,
to the whitelist. For details, Please contact support@netnut.io

https://netnut.io/faq

19.     Upon information and belief, the server of the Accused Instrumentalities is a

Transmission Control Protocol/Internet Protocol (TCP/IP) server that communicates of the

Internet with client devices based on TCP/IP protocol.  Upon information and belief, this server

stores, operates or uses a server operating system and uses a software application including

instructions to carry out the steps for fetching content as discussed above.

20.     Upon information and belief, the web server is a Hypertext Transfer Protocol

(HTTP) server responding to HTTP requests and addressed in the Internet using a web server IP

address.

**Is the communication between relays encrypted?**                                    −

Yes, for requests to the Super proxy you can use either HTTP or HTTPS. The communication protocol is encrypted by using a proprietary algorithm.

https://netnut.io/faq

21.     Defendant provides a Proxy Service through the Accused Instrumentalities allowing an NetNut service customer to utilize the Accused Instrumentalities in fetching content over the Internet.  Upon information and belief, Defendant's code installed on its customers' devices causes these devices to perform the steps of at least claims 1, 11, 12, 15, 17, 18, 26, 27 and 28 of the '968 Patent.  This code is under the control of Defendant, either directly or via Defendant's contractual relationship with its customers.  As this code is under the control of Defendant, Defendant causes each of these steps to also be performed.  In addition, given Defendant's contractual relationship with its customers, the customers utilization of the Accused Instrumentalities also causes each of the claimed steps to be performed.  Upon information and belief, client devices, including those controlled by Defendant's customers, can use the Accused Instrumentalities to fetch content over the Internet by sending a query to a server of the Accused Instrumentalities. As discussed above, upon information and belief, this query can comprise a URL corresponding with a webpage, audio and/or video content stored on a web server.

22.     Upon information and belief, as shown above, the client device that fetches content using the NetNut Proxy service comprises an Hypertext Transfer Protocol (HTTP) or Hypertext Transfer Protocol Secure (HTTPS) client for use with a first web server that is a HTTP or HTTPS server that respectively responds to HTTP or HTTPS requests and stores a first content identified by a first content identifier.  Upon information and belief, the client device fetches the content from the first web server using a second server distinct from the first web server and identified in

the Internet by a second IP address, and for use with a list of IP addresses.  As addressed above, upon information and belief, servers of the Accused Instrumentalities store a list of IP addresses. Upon information and belief, including as described above, the NetNut application stored on the client device causes the client device to perform a method that comprises (a) identifying, by the requesting client device, an HTTP or HTTPS request for the first content; (b) selecting, by the requesting client device, an IP address from the list; (c) sending, by the requesting client device, to the second server using the second IP address over the Internet in response to the identifying and the selecting, the first content identifier and the selected IP address; and (d) receiving, by the requesting client device, over the Internet in response to the sending, from the second server using the selected IP address, the first content.  Specifically, as non-limiting examples, the client device may select IP addresses by geographic location or prior use in the case of sticky IPs.

23.     Upon information and belief, as discussed above, the selecting by the client device of the Accused Instrumentalities may be based for example on the location of the IP address, or prior use of the IP address in the case of sticky IPs.  Upon information and belief, as discussed above, each of the IP addresses in the list is associated with a geographical location and the selecting can be based on geographical selection.

## How can I select an IP per country?                                        +

The country codes have the standard ISO coding. To select specific country please change the proxy URL for example: US.netnut.io, FI.netnut.io, etc.

https://netnut.io/faq

## Can I select an IP per city?                                               +

Yes, NetNut offers US city & state proxy selection.

https://netnut.io/faq

## How do I keep the same IP over different requests?                                    +

If you want to exit from the same IP over multiple requests, follow these
instructions: When entering the proxy URL you must add "-SNumber.
For example, if you wish to exit from US and to use sticky feature you should enter
this proxy URL: US-S1.netnut.io.
During the trial period, you will have -S1 (Sticky) server for each country except
US and ANY where with US you can select a number between -S1 to -S10,and
with ANY you can select a number between -S1 to -S20.
E.G: Any-S17.netnut.io, US-S7.netnut.io
The second change is when inserting the username, you must insert !aNUM
Where NUM is a number. Each number is mapped to a certain IP.
The numbers are 1-256 (e.g: !a200)
Example: curl –proxy us-S1.netnut.io:33128–proxy-user 'USERNAME!
aNUM:YOURPASS' http://www.google.com
NUM will be between 1 and 256.
In each -S number you will have access to 256 sticky IPs.

https://netnut.io/faq

        24.     Upon information and belief, the client device includes a web/Internet browser

application or an email application and the NetNut software installed on the client device includes

a driver that intercepts the request for the first content from the web browser application or email

application.



# Chrome Extension

Unlock the web using NetNut Chrome Extension without having to go through proxy integration. Easily target any country and choose static or rotating residential proxies right from your browser.

INSTALL ⌄

https://netnut.io/

25.     Upon information and belief, the client device is identified by a Media Access Control (MAC) address or a hostname and sends a message to the second server comprising the client device's IP address, MAC address, or hostname.

## How do I handle a 407 error message (Proxy authentication required)?

Encountering a 407 error message means that the client must first authenticate itself with the proxy. Resolving this issue requires adding the requested IPs, which are now refused connection, to the whitelist. For details, Please contact support@netnut.io

https://netnut.io/faq

26.     Jeffy Binhas and Yakub Kalvo were employed by Hola Networks Ltd., now known as Luminati, as sales managers. As employees, Mr. Binhas and Mr. Kalvo ("Former Employees") entered into a Personal Employment Agreement ("Employment Agreement") with Plaintiff on

15

March 13, 2017 and March 14, 2017, respectively.   The terms of the Employment Agreement include a confidentiality provision obligating the employee to keep in confidence Luminati's proprietary information.   The Employment Agreement also includes a non-compete clause prohibiting the employee from accepting employment with a company offering competing services within twelve months of the termination of employment with Luminati.  As employees, Mr. Binhas and Mr. Kalvo had access to Luminati confidential know-how and trade secrets, including client lists, client records, client data usage, accounts receivable documents, business plans, marketing research, and related work product.

27.     In September 2017, Hola Networks Ltd. underwent a corporate reorganization resulting in (a) the renaming of Hola Networks Ltd., which is now known as Luminati Networks Ltd, (b) the creation of company Hola Newco Ltd. ("Hola Newco"), subsequently renamed as WebSpark Ltd. ("WebSpark"); and (c) the creation of HolaVPN Ltd.    Following the reorganization, Messrs. Kalvo and Binhas were employed by Hola Newco. Hola Newco provided Mr. Kalvo with a notice of termination on January 30, 2018 followed by his dismissal on February 15, 2018.  Upon information and belief, Mr. Kalvo was hired by Defendant to sell Defendant's competing proxy service knowing about Mr. Kalvo's previous employment by Hola Networks Ltd., now known as Luminati, and benefiting from Mr. Kalvo's access to Luminati's trade secrets. For example, upon information and belief, Mr. Kalvo began contacting Plaintiff's customers within months of his formal dismissal in order to persuade them to purchase competing proxy services offered by Defendant. Luminati discovered these activities on behalf of NetNut less than three years before the filing of this complaint.

28.     Mr. Binhas terminated his employment with Hola Newco on August 13, 2018. Upon information and belief, Mr. Binhas was hired by Defendant to sell Defendant's competing

proxy service knowing about Mr. Binhas's previous employment by Hola Networks Ltd., now known as Luminati, and benefiting from Mr. Binhas's access to Luminati's trade secrets.  For example, upon information and belief, Mr. Binhas began contacting Plaintiff's customers within months of his formal termination in order to persuade them to purchase competing proxy services offered by Defendant. Luminati discovered these activities on behalf of NetNut less than three years before the filing of this complaint.

29.     Upon information and belief, Defendant hired the Former Employees, knowing them to be former employees of Luminati having access to Luminati's trade secrets including Luminati's customers list, which NetNut used to promote its own competing proxy services to the detriment of Luminati.  Upon information and belief, Defendant used this confidential information to promote its competing proxy business despite being aware that the Former Employees were formerly employed by Luminati and had access to Luminati trade secrets.  Upon information and belief, Defendant was aware that the Former Employees were subject to Employment Agreements prohibiting them from competing with Luminati and using Luminati's trade secrets at least as early as Luminati's subsequent suits against Mr. Kalvo and Mr. Binhas filed on January 2, 2019.

## COUNT I
### (Infringement of the '511 Patent)

30.     Luminati repeats and re-alleges the allegations contained in paragraphs 1-29 of this Complaint as if fully set forth herein.

31.     The '511 Patent entitled "System Providing Faster and More Efficient Data Communication" was duly and legally issued by the U.S. Patent and Trademark Office on November 19, 2019, from Application No. 16/278,109 filed on February 17, 2019, a continuation of Application No. 15/957,950, which is a continuation of application No. 14/025,109, which is a divisional of application No. 12/836,059, all of which claim priority to provisional application

61/249,624 filed on October 8, 2009. A true and accurate copy of the '511 Patent is attached hereto as Exhibit A.

32.     Each and every claim of the '511 Patent is valid and enforceable, and each enjoys a statutory presumption of validity under 35 U.S.C. § 282.

33.     All rights, title, and interest in the '511 Patent have been assigned to Luminati, who is the sole owner of the '511 Patent and possesses the right to past damages.

34.     Independent Claim 1 of the '511 Patent recites:

A method for fetching, by a first client device, a first content identified by a first content identifier and stored in a web server, for use with a first server that stores a group of IP addresses, the method by the first server comprising:

receiving, from the first client device, the first content identifier;

selecting, in response to the receiving of the first content identifier from the first client device, an IP address from the group;

sending, in response to the selecting, the first content identifier to the web server using the selected IP address;

receiving, in response to the sending, the first content from the web server; and

sending the received first content to the first client device, wherein the first content comprises a web-page, an audio, or a video content, and wherein the first content identifier comprises a Uniform Resource Locator (URL).

35.     As described above, upon information and belief, the Accused Instrumentalities comprise a server ("first server"), which receives from a client device ("first client device") a URL ("first content identifier") for content comprising a web-page, audio or video content ("first content") stored on a web server.  Upon information and belief, the server selects an IP address

from a group of IP addresses stored on the server in response to receiving the first content identifier and sends the URL to the web server using the selected IP address.  Upon information and belief, the server receives the first content from the web server in response to sending the URL and sends the received first content to the first client device.

36.     The '511 Patent includes a number of dependent claims.  In addition to practicing the steps of independent claim 1, upon information and belief as discussed above, Defendant and others using Defendant's Accused Instrumentalities also practice the steps of at least dependent claims 14, 17, 20, 21, 22, 25, 27, 28, 29, and 30.

37.     Defendant has had actual notice of the '511 Patent since at least the filing of this Complaint and know at least from this Complaint that implementation of the Accused Instrumentalities using servers in the United States infringe at least claims 1, 14, 17, 20, 21, 22, 25, 27, 28, 29, and 30 of the '511 Patent.

38.     Upon information and belief Defendant sold, offered to sell, used, tested, and imported and continue to sell, offer to sell, use, test, and import the Accused Instrumentalities into the United States.  Defendant imports its software, which is implemented on servers located in the United States. Defendant's software in the Accused Instrumentalities implements the steps of at least the above claims of the Asserted Patent and is not used for other commercial services or products.  Defendant provides the Proxy Service of the Accused Instrumentalities to their customers with the knowledge and intent that the customers' implementation of the service in the U.S. would infringe the '511 Patent.

39.     Defendant has been and is now infringing at least directly, indirectly and/or contributorily, one or more claims including at least claims 1, 14, 17, 20, 21, 22, 25, 27, 28, 29, and 30 of the '511 Patent, both literally and/or under the doctrine of equivalents, by implementing

the Accused Instrumentalities using servers located in the United States without authority and/or license from Luminati, and Defendant is liable to Luminati under 35 U.S.C. § 271 *et seq*., including but not limited to under Sections 271(a), (b), (c) and/or (g).  On information and belief, at least since the service of this Complaint, Defendant has been aware of the Asserted Patents yet has continued to infringe and cause its servers in the United States under Defendant's control to infringe claims of the Asserted Patents and have induced infringement.  On further information and belief, Defendant has developed, used, offered to sell and/or sold within the United States and imported into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use.  On further information and belief, Defendant also imports and sells as well as causes others to use within the United States a product which is made by a process patented in the United States whereby the importation, offer to sell, sale, and/or use of the product occurs during the term of such process patent.  Such products may include for example, the set of results sent to customers in the United States as created and assembled by the patented methods of the Asserted Patents.

40.    As a result of Defendant's infringement of the '511 Patent, Luminati has suffered and continues to suffer damages.  Thus, Luminati is entitled to recover from Defendant the damages Luminati sustained as a result of Defendant's wrongful and infringing acts in an amount no less than its lost profits and/or a reasonable royalty, together with interest and costs fixed by this Court together with increased damages up to three times under 35 U.S.C. § 284.

41.     Luminati has suffered damage because of the infringing activities of Defendant, its officers, agents, servants, employees, associates, partners, and other persons who are in active concert or participation therewith, and Luminati will continue to suffer irreparable harm for which there is no adequate remedy at law unless Defendant's infringing activities is preliminarily and permanently enjoined by this Court.  Luminati practices the Asserted Patents. Non-exclusive examples of damage incurred by Luminati as a result of Defendant's infringement includes, but is not limited to, lost profits and/or a reasonable royalty, loss of market share, lowered prices and the inability of Luminati to obtain the revenues and profits it would have been able to obtain but for the infringement, lost sales in other services when customers did not purchase Data Center proxy services or static residential proxy services from Luminati as a result of the infringement, and loss of convoyed sales of other related services that Luminati would have sold but for the infringement.

42.     Defendant's infringement of the '511 Patent is and continues to be deliberate and willful because Defendant was and is on notice of the '511 Patent at least as early as this Complaint, yet Defendant continues to infringe the '511 Patent.  This case should be deemed an exceptional case under 35 U.S.C. § 285, and if so, Luminati is entitled to recover its attorneys' fees.

**COUNT II**
(Infringement of the '968 Patent)

43.     Luminati repeats and re-alleges the allegations contained in paragraphs 1-42 of this Complaint as if fully set forth herein.

44.     The '968 Patent entitled "System Providing Faster and More Efficient Data Communication" was duly and legally issued by the U.S. Patent and Trademark Office on April 28, 2020, from Application No. 16/396,696 filed on April 28, 2019, a continuation of Application No. 15/957,942, which is a continuation of application No. 14/025,109, which is a divisional of

application No. 12/836,059, all of which claim priority to provisional application 61/249,624 filed on October 8, 2009. A true and accurate copy of the '968 Patent is attached hereto as Exhibit B.

45.     Each and every claim of the '968 Patent is valid and enforceable, and each enjoys a statutory presumption of validity under 35 U.S.C. § 282.

46.     All rights, title, and interest in the '968 Patent have been assigned to Luminati, who is the sole owner of the '968 Patent and possesses the right to past damages.

47.     Independent Claim 1 of the '968 Patent recites:

A method for use with a requesting client device that comprises an Hypertext Transfer Protocol (HTTP) or Hypertext Transfer Protocol Secure (HTTPS) client, for use with a first web server that is a HTTP or HTTPS server that respectively responds to HTTP or HTTPS requests and stores a first content identified by a first content identifier, for use with a second server distinct from the first web server and identified in the Internet by a second IP address, and for use with a list of IP addresses, the method comprising:

identifying, by the requesting client device, an HTTP or HTTPS request for the first content;

selecting, by the requesting client device, an IP address from the list;

sending, by the requesting client device, to the second server using the second IP address over the Internet in response to the identifying and the selecting, the first content identifier and the selected IP address; and

receiving, by the requesting client device, over the Internet in response to the sending, from the second server using the selected IP address, the first content.

48.     As described above, upon information and belief, the Accused Instrumentalities comprise a Hypertext Transfer Protocol (HTTP) or Hypertext Transfer Protocol Secure (HTTPS)

client user device ("requesting client device"), which identifies an HTTP or HTTPS request for first content stored on a web server, selects an IP address from a list of IP addresses, sends a first content identifier and selected IP address to the NetNut server ("second server") over the Internet, and receives in response the first content from the second server.  for content comprising a web-page, audio or video content ("first content") stored on a web server.

49.    The '968 Patent includes a number of dependent claims.  In addition to practicing the steps of independent claim 1, upon information and belief as discussed above, Defendant and others using Defendant's Accused Instrumentalities also practice the steps of at least dependent claims 11, 12, 15, 17, 18, 26, 27, and 28.

50.    Defendant has had actual notice of the '968 Patent since at least the filing of this Complaint and know at least from this Complaint that implementation of the Accused Instrumentalities using servers in the United States infringe at least claims 1, 11, 12, 15, 17, 18, 26, 27, and 28 of the '968 Patent.

51.    Upon information and belief Defendant sold, offered to sell, used, tested, and imported and continue to sell, offer to sell, use, test, and import the Accused Instrumentalities into the United States.  Defendant imports its software, which is implemented on user client devices located in the United States. Defendant's software in the Accused Instrumentalities implements the steps of at least the above claims of the Asserted Patent and is not used for other commercial services or products.  Defendant provides the Proxy Service of the Accused Instrumentalities to their customers with the knowledge and intent that the customers' implementation of the service in the U.S. would infringe the '968 Patent.

52.    Defendant has been and is now infringing at least directly, indirectly and/or contributorily, one or more claims including at least claims 1, 11, 12, 15, 17, 18, 26, 27, and 28 of

the '968 Patent, both literally and/or under the doctrine of equivalents, by implementing the Accused Instrumentalities using user client devices located in the United States without authority and/or license from Luminati, and Defendant is liable to Luminati under 35 U.S.C. § 271 *et seq*., including but not limited to under Sections 271(a), (b), (c) and/or (g).  On information and belief, at least since the service of this Complaint, Defendant has been aware of the Asserted Patents yet has continued to infringe and cause its user client devices in the United States under Defendant's control to infringe claims of the Asserted Patents and have induced infringement.  On further information and belief, Defendant has developed, used, offered to sell and/or sold within the United States and imported into the United States a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial noninfringing use.  On further information and belief, Defendant also imports and sells as well as causes others to use within the United States a product which is made by a process patented in the United States whereby the importation, offer to sell, sale, and/or use of the product occurs during the term of such process patent.  Such products may include for example, the set of results sent to customers in the United States as created and assembled by the patented methods of the Asserted Patents.

53.     As a result of Defendant's infringement of the '968 Patent, Luminati has suffered and continues to suffer damages.  Thus, Luminati is entitled to recover from Defendant the damages Luminati sustained as a result of Defendant's wrongful and infringing acts in an amount no less than its lost profits and/or a reasonable royalty, together with interest and costs fixed by this Court together with increased damages up to three times under 35 U.S.C. § 284.

54.     Luminati has suffered damage because of the infringing activities of Defendant, its officers, agents, servants, employees, associates, partners, and other persons who are in active concert or participation therewith, and Luminati will continue to suffer irreparable harm for which there is no adequate remedy at law unless Defendant's infringing activities is preliminarily and permanently enjoined by this Court.  Luminati practices the Asserted Patents. Non-exclusive examples of damage incurred by Luminati as a result of Defendant's infringement includes, but is not limited to, lost profits and/or a reasonable royalty, loss of market share, lowered prices and the inability of Luminati to obtain the revenues and profits it would have been able to obtain but for the infringement, lost sales in other services when customers did not purchase Data Center proxy services or static residential proxy services from Luminati as a result of the infringement, and loss of convoyed sales of other related services that Luminati would have sold but for the infringement.

55.     Defendant's infringement of the '968 Patent is and continues to be deliberate and willful because Defendant was and is on notice of the '968 Patent at least as early as this Complaint, yet Defendant continues to infringe the '968 Patent.  This case should be deemed an exceptional case under 35 U.S.C. § 285, and if so, Luminati is entitled to recover its attorneys' fees.

## COUNT III
(Misappropriation of Trade Secret Under Federal Defense of Trade Secret Act)

56.     Luminati repeats and re-alleges the allegations contained in paragraphs 1-55 of this Complaint as if fully set forth herein.

57.     Luminati takes reasonable measures to protect the confidentiality of valuable trade secrets related to its proxy service, including the requirement that its employees protect the confidentiality of Luminati trade secrets.  This non-public information has actual independent economic value derived from Luminati's experience in the residential proxy service field.

58.     Luminati's proxy service is intended for use in interstate or foreign commerce.

59.     Upon information and belief, Defendant misappropriated Luminati's trade secrets by hiring Luminati's former employees, knowing that each of them had access to Luminati's trade secrets related to Luminati's proxy services as well as a duty to preserve the confidentiality of Luminati's trade secrets, for the purpose of competing with Luminati's proxy services.

60.     Luminati has suffered damages in Texas and the United States and Defendant has been unjustly enriched as, upon information and belief, Luminati lost business to Defendant's competing NetNut service as a result of Defendant's misappropriation of Luminati's trade secrets.

61.     Defendant's misappropriation of Luminati trade secrets was willful and malicious.

62.     Luminati is entitled to recover the actual loss suffered by Luminati, any additional damages to account for Defendant's unjust enrichment, and exemplary damages as a result of Defendant's misappropriation of its trade secrets under 18 U.S.C. § 1836(b)(3)(B) and (C).

## COUNT IV
(Misappropriation of Trade Secret under Texas State Law)

63.     Luminati repeats and re-alleges the allegations contained in paragraphs 1-62 of this Complaint as if fully set forth herein.

64.     Luminati takes reasonable measures to protect the confidentiality of valuable trade secrets related to its proxy service, including the requirement that its employees protect the confidentiality of Luminati trade secrets.  This non-public information has actual independent economic value derived from Luminati's experience in the residential proxy service field.

65.     Upon information and belief, Defendant misappropriated Luminati's trade secrets by hiring Luminati's former employees, knowing that each of them had access to Luminati's trade secrets related to Luminati's proxy services as well as a duty to preserve the confidentiality of Luminati's trade secrets under their employment agreement with Luminati.

66.     Luminati has not provided authorization for Defendant to use its trade secrets, however, upon information and belief Defendant has used Luminati's trade secrets to compete with Luminati in the proxy services business.

67.     Luminati has suffered damages in Texas and the United States and Defendant has been unjustly enriched as, upon information and belief, Luminati lost business to Defendant's competing NetNut service as a result of Defendant's misappropriation of Luminati's trade secrets.

68.     Defendant's misappropriation of Luminati trade secrets was willful and malicious.

69.     Luminati is entitled to recover the actual loss suffered by Luminati, any additional damages to account for Defendant's unjust enrichment, and exemplary damages as a result of Defendant's misappropriation of its trade secrets under 18 U.S.C. § 1836(b)(3)(B) and (C).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff Luminati respectfully requests that this Court enter:

A.  A judgment in favor of Luminati that Defendant has and is infringing the Asserted Patents;

B.  A judgment declaring Defendant's infringement to be willful;

C.  A judgment declaring that this case is exceptional within the meaning of 35 U.S.C. § 285;

D.  A permanent injunction enjoining Defendant, its officers, directors, agents, servants, employees, associates, partners, and other persons who are in active concert or participation with Defendant including the officers, directors, agents, servants,

employees and associates of Defendant's partners, from infringing the Asserted Patents and/or such other equitable relief the Court determines is warranted in this case;

E.  A judgment and order requiring the Defendant to pay to Luminati its damages, enhanced damages, costs, expenses, prejudgment and post-judgment interest, and attorneys' fees, if applicable, for the Defendant's infringement of the Asserted Patents as provided under 35 U.S.C. §284 and/or §285, and an accounting of ongoing post-judgment infringement;

F.  A judgment in favor of Luminati that the Defendant misappropriated Luminati's trade secrets under 18 U.S.C. § 1836(b);

G.  A judgment and order for damages under 18 U.S.C. § 1836(b)(3)(B);

H.  A judgment and order for exemplary damages under 18 U.S.C. § 1836(b)(3)(C); and

I.  Any and all other relief, at law or in equity that this Court deems just or proper.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Luminati hereby demands a trial by jury of all issues so triable.

Dated:  June 11, 2020                     Respectfully submitted,

By: */s/ Korula T. Cherian*
Korula T. Cherian
Robert Harkins
RuyakCherian LLP
1936 University Ave, Suite 350
Berkeley, CA  94702
Telephone: (510) 944-0185

S. Calvin Capshaw
State Bar No. 03783900

Elizabeth L. DeRieux
State Bar No. 05770585
Capshaw DeRieux, LLP
114 E. Commerce Ave.
Gladewater, TX 75647
Telephone: 903-845-5770
ccapshaw@capshawlaw.com
ederieux@capshawlaw.com

Attorneys for Plaintiff
Luminati Networks Ltd.