# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | | |
|---|---|---|
| **LUMINATI NETWORKS LTD.** | § | |
| | § | |
| Plaintiff, | § | CIVIL ACTION NO. 2:20-cv-188-JRG-RSP |
| | § | |
| v. | § | JURY TRIAL DEMANDED |
| | § | |
| **NETNUT LTD.** | § | |
| | § | |
| Defendant. | § | |

## DEFENDANT'S MOTION TO DISMISS

# TABLE OF CONTENTS

I. INTRODUCTION ................................................................................................................. 1

II. THIS CASE SHOULD BE DISMISSED FOR LACK OF JURISDICTION ....................... 3

    A. Requirements for Personal Jurisdiction ..................................................................... 3

    B. There is No General Personal Jurisdiction Over NetNut in Texas............................ 4

    C. There is No Specific Personal Jurisdiction Over NetNut in Texas............................ 5

III. THE TRADE SECRET CLAIMS SHOULD BE DISMISSED BECAUSE THEY ARE CENTERED IN ISRAEL AND ARE CURRENTLY BEING LITIGATED IN ISRAEL ... 8

    A. Luminati's Federal Trade Secret Claim Lacks Required Allegations ....................... 9

    B. Luminati's State Law Trade Secret Claim Should be Dismissed in View of its Ongoing Israeli Litigation Based on the Same Facts.............................................. 10

IV. CONCLUSION.................................................................................................................... 13

# TABLE OF AUTHORITIES

**CASES**

*AFTG-TG, LLC v. Nuvoton Tech. Corp.*,
   689 F.3d 1358 (Fed. Cir. 2012)..................................................................................................4

*Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*,
   566 F.3d 1012 (Fed. Cir. 2009) .................................................................................................3

*Blue Spike, LLC v. Texas Instruments, Inc.*,
   No. 6:12-cv-499, 2014 WL 11829323 (E.D. Tex. Mar. 31, 2014) ...........................................3

*Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cty.*,
   137 S. Ct. 1773 (2017)..............................................................................................................4

*Burger King Corp. v. Rudzewicz*,
   471 U.S. 462 (1985)..............................................................................................................3, 4

*Celgard, LLC v. SK Innovation Co., Ltd.*,
   792 F.3d 1373 (Fed. Cir. 2015).................................................................................................3

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014)............................................................................................................. 3-5

*Freudensprung v. Offshore Technical Servs., Inc.*,
   379 F.3d 327 (1985)..................................................................................................................4

*GlobeRanger Corp. v. Software AG USA, Inc.*,
   No. 3:11-cv-0403-B, 2015 WL 3648577 (N.D. Tex. June 11, 2015)......................................11

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011)..................................................................................................................4

*Hays County Guardian v. Supple*,
   969 F.2d 111 (5th Cir. 1992) ..................................................................................................12

*Helicopteros Nacionales de Colombia, S.A. v. Hall*,
   466 U.S. 408 (1984)..................................................................................................................4

*HTI IP LLC v. DriveOk, Inc.*,
   No. 6:09-cv- 370, 2010 WL 3075200 (E.D. Tex. Aug. 4, 2010) ..............................................3

*Int'l Shoe Co. v. Washington*,
   326 U.S. 310 (1945)..............................................................................................................3, 4

*Internet Machines LLC v. Alienware Corp.*,
   No. 6:10-cv-023, 2011 WL 2292961 (E.D. Tex. June 7, 2011) ...............................................5

*LSI Indus. Inc. v. Hubbell Lighting, Inc.*,
   232 F.3d 1369 (Fed. Cir. 2000) .................................................................................................3

*Luminati Networks Ltd. v. BIScience Inc.*,
   No. 2:18-cv-483, 2019 WL 2084426 (E.D. Tex. May 13, 2019) ................................... *passim*

*Nuance Commc'ns, Inc. v. Abbyy Software House*,
   626 F.3d 1222 (Fed. Cir. 2010) .................................................................................................4

*ProV Int'l Inc. v. Lucca*,
   No. 8:19-cv-978, 2019 WL 5578880 (M.D. Fla. Oct. 29, 2019) ............................................10

*Roberts v. Paulin*,
   No. 07-cv-13207, 2007 WL 3203969 (E.D. Mich. Oct. 31, 2007) ...........................................8

*Tuna Processors, Inc. v. Anova Food, Inc.*,
   No. 07-6192, 2007 WL 3232609 (D. Or. Nov. 1, 2007) ............................................................8

*Voda v. Cordis Corp.*,
   476 F.3d 887 (Fed. Cir. 2007) .................................................................................................12

*WorldVentures Hldgs., LLC v. Mavie*,
   No. 4:18-cv-393, 2018 WL 6523306 (E.D. Tex. Dec. 12, 2018) ..............................................3

*World-Wide Volkswagen Corp. v. Woodson*,
   444 U.S. 286 (1980) ..................................................................................................................4

*Yates v. U.S.*,
   354 U.S. 298 (1957) ..................................................................................................................9

## STATUTES / RULES

18 U.S.C. § 1837(2) ....................................................................................................................2, 8, 9

28 U.S.C. § 1367(a) ........................................................................................................................8, 11

28 U.S.C. § 1367(c) ................................................................................................................. *passim*

Fed. R. Civ. P. 12(b)(2) ......................................................................................................................1, 8

Fed. R. Civ. P. 12(b)(6) ............................................................................................................................1

Defendant NetNut Ltd. ("NetNut") respectfully submits this motion to dismiss Plaintiff Luminati Networks Ltd.'s ("Luminati") Complaint (Dkt. 1) pursuant to Fed. R. Civ. P. 12(b)(2) for lack of personal jurisdiction. This motion also identifies defects in Luminati's trade secret allegations that warrant dismissal pursuant to Fed. R. Civ. P. 12(b)(6) and the Court's discretionary supplemental jurisdiction under 28 U.S.C. § 1367(c).

**I.       INTRODUCTION**

Both parties here—Luminati and NetNut—are Israeli companies. (Dkt. 1 ¶¶ 1, 2). NetNut's only office in the world is in Tel Aviv, Israel. (Ex. D (Declaration of Barak Avitbul), ¶¶ 2, 3). All of NetNut's 17 employees live and work in Israel. (*Id*. at ¶ 2). None of NetNut's employees have traveled to Texas on company business, NetNut has no bank account or property in Texas, and NetNut has no registered agent in Texas. (*Id*. at ¶ 5). The extent of NetNut's connections to Texas are (1) a total of two customers that are based in Texas and (2) NetNut's former use of two internet service providers ("ISPs") and one current ISP that uses some IP addresses registered in Texas, which are not the source of the alleged patent infringement in Luminati's complaint. (*Id*. at ¶¶ 7, 8).

Attempting to create personal jurisdiction in Texas, Luminati makes assertions mirroring its prior allegations against a different Israeli company, BIScience (2009) Ltd., where this Court found jurisdiction. *Luminati Networks Ltd. v. BIScience Inc*., No. 2:18-cv-483, 2019 WL 2084426, at *4 (E.D. Tex. May 13, 2019). But there is a key difference between this case and *BIScience*: BIScience had ***proxy services in Texas***; NetNut does not. (Ex. D (Declaration of Barak Avitbul), ¶ 8). Because Luminati builds its jurisdiction arguments on the false assumption that NetNut has proxy servers in Texas, the Complaint fails to establish specific jurisdiction over NetNut.

Luminati's general jurisdiction assertions rely on another set of facts similarly divorced from reality. Luminati contends that this Court has personal jurisdiction over NetNut because it

1

has "sufficient minimum contacts with this forum as a result of business conducted within the State of Texas, and/or pursuant to Fed. R. Civ. P. 4(k)(2)." (Dkt. 1 ¶ 5). Luminati alleges that "at least a portion" of the alleged infringement occurred in Texas and that NetNut "maintains continuous and systematic contacts within this Judicial District, purposefully avails itself of the privilege of doing business in Texas, and/or derives substantial revenue from services provided in Texas." (*Id.*). As discussed in more detail below, this is not true. NetNut has insufficient contacts with Texas such that the exercise of personal jurisdiction over NetNut would offend traditional notions of fair play and substantial justice. NetNut has none of the indicia of personal jurisdiction recognized by the law, such as an office or other real estate in Texas. (Ex. D (Declaration of Barak Avitbul), ¶¶ 4, 5). Nor does it have employees, a registered agent, or a bank account in Texas, make business trips to Texas, attend trade shows in Texas, or engage in specific marketing to Texas customers. (*Id.*). NetNut has also never invoked the legal system in Texas. (*Id.*). Nothing in Luminati's Complaint alleges otherwise.

Luminati's trade secret allegations should also be dismissed for separate reasons. The allegations under the federal Defend Trade Secrets Act fail because they are missing a critical element—that "an act in furtherance of the offense was committed in the United States." 18 U.S.C. § 1837(2). The state law counterpart claim should also be dismissed pursuant to the Court's discretion under 28 U.S.C. § 1367(c), since Luminati is *currently litigating* the same claim based on the same facts against the same two individuals (Jeffy Binhas and Yakub Kalvo) in Israel under Israeli law. (Dkt. 1 ¶ 26 (identifying Messrs. Binhas and Kalvo); Ex. D (Declaration of Barak Avitbul) ¶ 11; Ex. A (translation of initial filing against Mr. Kalvo in Israel); Ex. B (translation of initial filing against Mr. Binhas in Israel); Ex. C (certificate of translation)). There is no reason for duplicative litigation here involving the same individuals, evidence, and allegations. As Luminati's actions have demonstrated, its trade secret allegations can and should be litigated in

2

Israeli court.

## II. THIS CASE SHOULD BE DISMISSED FOR LACK OF JURISDICTION

### A. Requirements for Personal Jurisdiction

Personal jurisdiction is governed by Federal Circuit law in patent infringement actions. *Autogenomics, Inc. v. Oxford Gene Tech. Ltd.*, 566 F.3d 1012, 1016 (Fed. Cir. 2009); *see also Blue Spike, LLC v. Texas Instruments, Inc.*, No. 6:12-cv-499, 2014 WL 11829323, at *1 (E.D. Tex. Mar. 31, 2014). The plaintiff bears the burden of establishing personal jurisdiction over the defendant. *Celgard, LLC v. SK Innovation Co., Ltd.*, 792 F.3d 1373, 1378 (Fed. Cir. 2015).

A court can exercise personal jurisdiction over an out-of-state defendant only if the forum state's long-arm statute permits jurisdiction without violating federal due process as delineated in *Int'l Shoe Co. v. Washington*, 326 U.S. 310 (1945). *HTI IP LLC v. DriveOk, Inc.*, No. 6:09-cv-370, 2010 WL 3075200, at *4 (E.D. Tex. Aug. 4, 2010) (*citing LSI Indus. Inc. v. Hubbell Lighting, Inc.*, 232 F.3d 1369, 1371 (Fed. Cir. 2000)). The Texas long-arm statute is coextensive with due process such that the analysis collapses into a single inquiry. *WorldVentures Hldgs., LLC v. Mavie*, No. 4:18-cv-393, 2018 WL 6523306, at *4 (E.D. Tex. Dec. 12, 2018). To establish whether a court has personal jurisdiction over a defendant, a plaintiff must show: (1) the defendant has purposefully availed itself of the benefits and protections of the forum state by establishing minimum contacts with the forum state; and (2) the exercise of jurisdiction over the defendant does not offend traditional notions of fair play and substantial justice. *Int'l Shoe*, 326 U.S. at 316-20 (1945); *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 474-77 (1985). The type of contacts with the forum state determine whether specific or general jurisdiction may be invoked. *Daimler AG v. Bauman*, 571 U.S. 117, 126 (2014); *WorldVentures*, 2018 WL 6523306, at *4.

General jurisdiction exists for a corporate defendant only when its "corporate operations within a state [are] so substantial and of such a nature" to justify suit based on activity entirely

3

distinct from the alleged activities. *Daimler*, 571 U.S. at 127 (citing *Int'l Shoe*, 326 U.S. at 318). The operations must be so continuous and systematic that the corporate defendant is "essentially at home in the forum State." *Id.* (citing *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414, n. 9 (1984)). Only a limited set of contacts support general jurisdiction of a corporate defendant, including the defendant being incorporated or having a principal place of business in the forum state. *Id.* at 137; *see also Bristol-Myers Squibb Co. v. Super. Ct. of Cal., San Francisco Cty.*, 137 S. Ct. 1773, 1780 (2017).

To exercise specific jurisdiction, a court must determine "(1) whether the defendant purposefully directs activities at the forum's residents; (2) whether the claim arises out of or relates to those activities; and (3) whether assertion of personal jurisdiction is reasonable and fair." *AFTG-TG, LLC v. Nuvoton Tech. Corp.*, 689 F.3d 1358, 1361 (Fed. Cir. 2012) (*citing Nuance Commc'ns, Inc. v. Abbyy Software House*, 626 F.3d 1222, 1231 (Fed. Cir. 2010)). The focus of the specific jurisdiction inquiry is on the "relationship between the defendant, the forum, and the litigation." *Freudensprung v. Offshore Technical Servs., Inc.*, 379 F.3d 327, 343 (1985) (*quoting Burger King*, 471 U.S. at 474). However, the primary concern is the burden on the defendant. *Bristol-Myers Squibb*, 137 S. Ct. at 1780 (citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 292 (1980). Random, fortuitous, or attenuated contacts are insufficient to establish purposeful availment. *Burger King*, 471 U.S. at 476.

### B. There is No General Personal Jurisdiction Over NetNut in Texas

NetNut is not subject to general personal jurisdiction in Texas. NetNut is neither incorporated in nor operates any place of business in Texas. (Ex. D (Declaration of Barak Avitbul) ¶¶ 4, 5). NetNut is not registered to do business in Texas, does not have a registered agent in Texas, does not have a bank account in Texas, does not have an office or any property in Texas,

4

does not employ personnel in Texas, does not conduct visits to Texas for business, does not attend trade shows or conferences in Texas, and does not specifically advertise to Texas residents as opposed to other locations.  (*Id.* at ¶ 5).  NetNut's corporate activities are therefore not so continuous and systematic such that it can be considered "at home" in Texas sufficient to exercise general jurisdiction in this forum.  *Daimler*, 571 U.S. at 126.  Luminati alleges no activities that establish otherwise.  *See, e.g.*, *Internet Machines LLC v. Alienware Corp.*, No. 6:10-cv-023, 2011 WL 2292961, at *4 (E.D. Tex. June 7, 2011).

### C.  There is No Specific Personal Jurisdiction Over NetNut in Texas

NetNut is not subject to specific personal jurisdiction in this forum.  Luminati fails to establish that NetNut purposefully directs activities toward Texas or that Luminati's claims arise out of any contact NetNut has with Texas.

Luminati generally alleges that NetNut "has sufficient minimum contacts with this forum as a result of business conducted within the State of Texas, and/or pursuant to Fed. R. Civ. P. 4(k)(2)."  (Dkt. 1 ¶ 5).  The only non-general allegations made are that:

> "***Defendant's servers that provide the functionality performing steps*** resulting in infringement alleged herein are located throughout the United States, including upon information and belief in Texas, such as the server providing as a non-limiting example the IP address of 104.245.75.95 from Amarillo Wireless. *See e.g.* https://www.stupidproxy.com/netnut/. Defendant touts the ability to select IP addresses by location based on city in the United States. Upon information and belief, this includes cities in Texas, where the data center servers are located."

(*Id*. ¶ 5 (emphasis added)).  As an initial matter, ISPs such as Amarillo Wireless are not owned, leased, or controlled by NetNut.  (Ex. D (Declaration of Barak Avitbul) ¶¶ 7-9).  ISPs are run by independent companies who control their operations.  (*Id.*).  Moreover, the location and use of an ISP (such as Amarillo Wireless) is not the focus of Luminati's alleged theory of infringement, as made clear by the Complaint.  (*Id.*).  Instead, Luminati alleges infringement based on functionality

5

of ***proxy servers***.  (Dkt. 1 ¶ 5.).  As shown in the below figure from Luminati's Complaint, proxy servers and ISPs are different things:



(*Id.* at ¶ 13 (comment bubbles added)).  The proxy servers in NetNut's service are ***not located in Texas***.  (Ex. D (Declaration of Barak Avitbul) ¶ 8).  Instead, the U.S. proxy servers in NetNut's service are located in other states, such as ▇▇▇▇▇▇▇▇▇▇▇▇.  (*Id.*)  This is an important distinction from the *BIScience* case, where the defendant's service utilized "residential proxy devices in ten Texas cities."  *See BIScience*, 2019 WL 2084426, at *4 ("Those proxy service activities are 'purposefully directed' at Texas, and Luminati's claims for patent infringement allege 'injuries that arise out of or relate to those activities.'").

The locations associated with IP addresses and ISPs fail to establish that NetNut purposefully directs activities towards Texas.  First, Luminati incorrectly asserts that NetNut allows customers to require the use of IP addresses at locations in Texas.  (Dkt. 1 ¶ 6).  While NetNut configured its connection request syntax to allow requests for connections to certain U.S.

6

cities, none of those cities are in Texas. (Ex. D (Declaration of Barak Avitbul) ¶ 8). Second, NetNut has no control over where ISPs register their IP addresses (IP address location is determined based on where the ISP registers the address and not the physical location of the server), nor has NetNut requested any ISP to provide IP addresses registered in Texas. (*Id.* at ¶ 9). Thus, even if some ISPs choose to route NetNut traffic using an IP address registered in Texas, the ISP's use of a Texas-registered IP address is its own, independent decision and not at the purposeful direction of NetNut. (*Id.*). Moreover, while NetNut did have agreements with two ISPs in Texas in the past (including                    ), its agreements with those ISPs ended before the filing of Luminati's Complaint. (*Id.* at ¶ 7). In addition, NetNut did identify one ISP with a Mexican address that has used IP addresses registered in Texas. (*Id.*). Finally, Luminati does not allege that any of the generic routing functions provided by an ISP amount to infringement of either asserted patent. (*See* Dkt. 1 ¶¶ 30-55). Accordingly, the alleged infringement, according to the Complaint itself, does not arise out of NetNut's agreements with ISPs. Luminati's Complaint thus fails to establish a prima facie case that NetNut purposefully directs activities at residents of this forum relating to or arising out of the allegedly infringing activity. *See BIScience*, 2019 WL 2084426, at *4.

The customer activity alleged by Luminati is also minimal when compared to NetNut's overall business. As of August 20, 2020, NetNut has had hundreds of customers since its founding in 2017, but only two current customers have Texas addresses. (Ex. D (Declaration of Barak Avitbul) ¶ 10). The total revenue for those two customers is approximately                         . (*Id.*). By comparison, NetNut has total worldwide revenue of approximately          per month. (*Id.*). As courts have recognized, minimal sales in a forum state, absent any purposeful activity focused on the state, are insufficient to confer personal jurisdiction. *See, e.g., Roberts v. Paulin*, No. 07-cv-13207, 2007

WL 3203969, at *4, *6 (E.D. Mich. Oct. 31, 2007) (finding lack of personal jurisdiction where defendant had less than $500 of sales in forum state); *Tuna Processors, Inc. v. Anova Food, Inc.*, No. 07-6192, 2007 WL 3232609, at *4 (D. Or. Nov. 1, 2007) (finding lack of personal jurisdiction despite two allegedly infringing sales in forum state). Accordingly, while there are a small number of NetNut customers in Texas, representing minimal sales, NetNut has never purposefully directed any aspect of its business operations to Texas.

For these reasons, the allegations in the Complaint are insufficient to establish specific personal jurisdiction. The Complaint should be dismissed under Fed. R. Civ. P. 12(b)(2).

### III.  THE TRADE SECRET CLAIMS SHOULD BE DISMISSED BECAUSE THEY ARE CENTERED IN ISRAEL AND ARE CURRENTLY BEING LITIGATED IN ISRAEL

Luminati's two trade secret claims should be dismissed for separate reasons. The claim based the federal Defend Trade Secrets Act is lacking because Luminati nowhere alleges that "an act in furtherance of the offense was committed in the United States." 18 U.S.C. § 1837(2). The plain language of the statue and the Court's decision in *BIScience* confirm that dismissal of this claim is appropriate. Separately, Luminati's corresponding claim based on Texas state law[1] invokes the Court's supplemental jurisdiction under 28 U.S.C. § 1367(a), which is discretionary under 28 U.S.C. § 1367(c). The Court should exercise its discretion to dismiss Luminati's Texas state law claim because Luminati is already litigating trade secret claims in Israel against the same two employees identified in its Complaint (Messrs. Binhas and Kalvo), based on the same alleged facts and conduct, proximate to the relevant evidence (in Israel), and in accordance with applicable Israeli law. (Ex. D (Declaration of Barak Avitbul) ¶ 11); Ex. A (translation of initial filing against

---

[1] While purporting to be a claim for "Misappropriation of Trade Secret under Texas State Law," the Complaint incorrectly cites "18 U.S.C. § 1836(b)(3)(B) and (C)" rather than state law. (Dkt. 1 ¶ 69).

Mr. Kalvo in Israel); Ex. B (translation of initial filing against Mr. Binhas in Israel); Ex. C (certificate of translation).

### A.  Luminati's Federal Trade Secret Claim Lacks Required Allegations

The federal Defend Trade Secrets Act may apply to conduct outside of the United States in just two situations: where (1) "the offender is a natural person who is a citizen or permanent resident alien of the United States, or an organization organized under the laws of the United States or a State or political subdivision thereof" or (2) "an act in furtherance of the offense was committed in the United States." 18 U.S.C. § 1837(1)-(2). The first prong does not apply, for NetNut is an Israeli company. (Dkt. 1 ¶ 2). The second prong is also not met. Luminati nowhere alleges any "act in furtherance of the offense [] committed in the United States." (*See id*. at ¶¶ 26-29, 56-69). Indeed, Luminati nowhere alleges any action by Mr. Binhas, Mr. Kalvo, or anyone else at NetNut, occurring in the United States.

The Court's analysis in *BIScience* is instructive here. In *BIScience* the Court interpreted the language "an act in furtherance of the offense" in 18 U.S.C. § 1837(2) consistent with federal conspiracy precedent. *BIScience*, 2019 WL 2084426, at *9-*10. Luminati alleged in *BIScience* that its former employees were hired by the defendant and that the "'former employees employed Luminati's confidential trade secrets on behalf of [BIScience] in furtherance of the competing "Geosurf" residential proxy service.'" *Id*. at *10. Luminati also alleged that the defendant's acts "'caus[ed] harm to Luminati in the United States' via lost customers." *Id*. The Court found these allegations inadequate to state a claim under the federal Defend Trade Secrets Act, since ***damages*** allegedly suffered by a plaintiff, "standing alone, would not be acts 'in furtherance of' misappropriation but rather would be the consequence of a 'fully completed operation.'" *Id*. at *11 (quoting *Yates v. U.S.*, 354 U.S. 298, 334 (1957)). While merely alleging "damages" occurring in the United States was insufficient, the Court nonetheless found that a separate allegation by

9

Luminati was sufficient to survive a motion to dismiss—specifically, an allegation that "by 'using ... [Luminati's] trade secrets, [BIScience] has *committed acts in the State of Texas and the United States*.'" *Id*. at *11 (emphasis added).

The guidance of *BIScience* leads to the opposite outcome here. Here, Luminati makes the allegation found inadequate in *BIScience* (damages in the United States) but *not* the allegation found sufficient (acts in the United States in furtherance of trade secret misappropriation). Specifically, Luminati alleges that it "has suffered *damages* in Texas and the United States and Defendant has been unjustly enriched as, upon information and belief, Luminati lost business to Defendant's competing NetNut service as a result of Defendant's misappropriation of Luminati's trade secrets." (Dkt. 1 ¶ 60 (emphasis added)). This is exactly the type of allegation found inadequate in *BIScience*. *BIScience*, 2019 WL 2084426, at *11. And in contrast to *BIScience*, Luminati here never alleges that any NetNut employee has committed any specific acts in the United States in furtherance of the alleged misappropriation. (*See* Dkt. 1 ¶¶ 26-29, 56-62); *BIScience*, 2019 WL 2084426, at *11. Given Luminati's inability to plead this required element of trade secret misappropriation under the federal Defend Trade Secrets Act, its claim should be dismissed. *See also ProV Int'l Inc. v. Lucca*, No. 8:19-cv-978, 2019 WL 5578880, at *3 (M.D. Fla. Oct. 29, 2019) (finding that "plaintiffs allege no facts showing that 'an act in furtherance of the offense was committed in the United States,'" and dismissing claim).

### B. Luminati's State Law Trade Secret Claim Should be Dismissed in View of its Ongoing Israeli Litigation Based on the Same Facts

Luminati's own actions confirm that its trade secret claims can and should be litigated in Israel. While the Complaint includes a passing reference to "Luminati's subsequent suits against Mr. Kalvo and Mr. Binhas filed on January 2, 2019," Dkt. 1 ¶ 29, it does not confront the fact that its litigation in Israel is already addressing the exact same alleged conduct by Messrs. Kalvo and

10

Binhas that it alleges here.  Because the Court would need to exercise supplemental (not original) jurisdiction over Luminati's state law claim for trade secret misappropriation under 28 U.S.C. § 1367(a), the Court has discretion to decline supplemental jurisdiction under § 1367(c).  *See GlobeRanger Corp. v. Software AG USA, Inc.*, No. 3:11-cv-0403-B, 2015 WL 3648577, at *8 (N.D. Tex. June 11, 2015) (supplemental jurisdiction over state law trade secret claim governed by 28 U.S.C. § 1367).  Respectfully, NetNut asks that the Court exercise this discretion and dismiss Luminati's state law claim.

In *BIScience*, the Court exercised its discretion under § 1367(a) to dismiss a claim for tortious interference with employment agreements.  There, Luminati alleged that the defendant "hired former employees of Luminati for the purpose of obtaining Luminati's trade secrets, in violation of those former employees' employment agreements, which contained both non-compete and confidentiality provisions."  *BIScience*, 2019 WL 2084426, at *5-*6.  Because the relevant events took place in Israel, Israeli law would apply, and evidence was "likely centered" in Israel, the Court decided not to hear the claim.  *Id*.  The same is true here.



(Ex. A, ¶¶ 10, 20-21, Appx. 3; Ex. B, ¶¶ 10, 20, Appx. 3).  Luminati alleges the same here.  (Dkt. 1 ¶¶ 26-29, 65).

(Ex. A, ¶¶ 5, 22-31; Ex. B, ¶¶ 5, 23-32).  Again, Luminati alleges the same here.  (Dkt. 1 ¶¶ 26-29, 65-66).

11

(Ex. A, Appx. 3, Appx. 9; Ex. B, Appx. 3, Appx. 7). ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆ (Ex. A,

¶ 19, Appx. 4, Appx. 10; Ex. B, ¶ 19, Appx. 4, Appx. 8). ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

▆▆▆ (Dkt. 1 ¶ 27).

There is no reason why Luminati should be permitted to re-litigate all of these issues in the present case. As the Court in *BIScience* held: "Having determined that Israeli law would likely apply to this action, the underlying conduct of which occurred entirely in Israel, the Court finds that resolution of this dispute is properly left to the court system in Israel." *BIScience*, 2019 WL 2084426, at *6. The Court also referenced comity and "the principle of avoiding unreasonable interference with the authority of other sovereigns" in deciding to decline supplemental jurisdiction under § 1367(c). *Id.* (quoting *Voda v. Cordis Corp.*, 476 F.3d 887, 903 (Fed. Cir. 2007)). The same reasoning applies even more powerfully here. While in *BIScience* there was no co-pending litigation in a foreign country addressing the same issues attempted to be litigated in this Court, here there is. Luminati itself initiated the litigation against Messrs. Kalvo and Binhas in Israel, and as discussed above, is currently litigating the very same factual issues it seeks to re-litigate in this Court. The Court should decline Luminati's invitation for redundant and costly litigation here, after it already made the decision to file suits in Israel. *Cf. Hays County Guardian v. Supple*, 969 F.2d 111, 125 (5th Cir. 1992) ("Adjudicating state-law claims in federal court while identical claims are pending in state court would be a pointless waste of judicial resources.").

In addition, the principles of efficiency, fairness, and comity all favor letting Luminati continue to litigate its trade secret claims in Israel rather than this Court. Messrs. Kalvo and Binhas themselves, and all of the evidence relevant to Luminati's trade secret claim, are located in Israel. (Ex. D (Declaration of Barak Avitbul), ¶ 11). ▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆▆

12



(*Id*. at ¶¶ 11-12).

The principles of efficiency and comity thus all strongly support letting Luminati litigate its claims in its first-chosen forum (Israel).  Further, the principle of fairness leads to the same conclusion, lest NetNut and Messrs. Kalvo and Binhas have to deal with duplicative litigation in two different international fora.  Consistent with the Court's decision in *BIScience*, the Court should exercise its discretion to dismiss Luminati's state law trade secret claim under 28 U.S.C. § 1367(c).

## IV.     CONCLUSION

For the above reasons, the Court should dismiss this case for lack of personal jurisdiction. Luminati's trade secret claims should also be dismissed in view of the Israeli litigation that Luminati itself has commenced, and for failure to state a claim.

Dated:  August 20, 2020         By:         */s/ Eric H. Findlay*
                                            Eric H. Findlay (TX Bar No. 00789886)
                                            FINDLAY CRAFT, P.C.
                                            102 North College Avenue, Suite 900
                                            Tyler, Texas 75702
                                            Tel: (903) 534-1100
                                            Fax: (903) 534-1137
                                            Email: efindlay@findlaycraft.com

                                            Elliot C. Cook
                                            Finnegan, Henderson, Farabow,
                                            Garrett & Dunner, LLP
                                            11955 Freedom Drive, Reston,
                                            VA 20190-5675
                                            Tel: (571) 203-2738
                                            Fax: (202) 408-4400

elliot.cook@finnegan.com

Cory C. Bell
Finnegan, Henderson, Farabow,
Garrett & Dunner, LLP
Two Seaport Lane
Boston, MA 02210-2001
Tel: (617) 646-1641
Fax: (202) 408-4400
cory.bell@finnegan.com

*Attorneys For
Defendant NetNut Ltd.*

14

██████████████████████

**CERTIFICATE OF SERVICE**

I hereby certify that on August 20, 2020 the within document was filed with the Clerk of the Court using CM/ECF which will send notification of such filing to the attorneys of record in this case.

*/s/ Eric H. Findlay*
Eric H. Findlay

**CERTIFICATE OF AUTHORIZATION TO FILE UNDER SEAL**

I hereby certify that the foregoing document is authorized to be filed under seal pursuant to the Unopposed Motion for Leave to File Under Seal (D.I. 14) entered in this case.

*/s/ Eric H. Findlay*
Eric H. Findlay