# Exhibit 1

UNITED STATES PATENT AND TRADEMARK OFFICE

**UNITED STATES DEPARTMENT OF COMMERCE**
**United States Patent and Trademark Office**
Address: COMMISSIONER FOR PATENTS
P.O. Box 1450
Alexandria, Virginia 22313-1450
www.uspto.gov

| APPLICATION NO. | FILING DATE | FIRST NAMED INVENTOR | ATTORNEY DOCKET NO. | CONFIRMATION NO. |
|---|---|---|---|---|
| 90/014,624 | 12/04/2020 | 10484511 | NNUT-02-511-EPR | 1012 |

131926          7590          01/21/2021

May Patents Ltd. c/o Dorit Shem-Tov
P.O.B 7230
Ramat-Gan, 5217102
ISRAEL

| EXAMINER |
|---|
| SORRELL, ERON J |

| ART UNIT | PAPER NUMBER |
|---|---|
| 3992 | |

| MAIL DATE | DELIVERY MODE |
|---|---|
| 01/21/2021 | PAPER |

**Please find below and/or attached an Office communication concerning this application or proceeding.**

The time period for reply, if any, is set in the attached communication.

PTOL-90A (Rev. 04/07)



**UNITED STATES PATENT AND TRADEMARK OFFICE**

Commissioner for Patents
United States Patent and Trademark Office
P.O. Box 1450
Alexandria, VA 22313-1450
www.uspto.gov

**DO NOT USE IN PALM PRINTER**

(THIRD PARTY REQUESTER'S CORRESPONDENCE ADDRESS)

LISTON ABRAMSON LLP
THE CHRYSLER BUILDING
405 LEXINGTON AVE., 46TH FLOOR
NEW YORK, NY 10174

# *EX PARTE* REEXAMINATION COMMUNICATION TRANSMITTAL FORM

REEXAMINATION CONTROL NO. *90/014,624* .

PATENT UNDER REEXAMINATION  *10484511* .

ART UNIT *3992* .

Enclosed is a copy of the latest communication from the United States Patent and Trademark Office in the above identified *ex parte* reexamination proceeding (37 CFR 1.550(f)).

Where this copy is supplied after the reply by requester, 37 CFR 1.535, or the time for filing a reply has passed, no submission on behalf of the *ex parte* reexamination requester will be acknowledged or considered (37 CFR 1.550(g)).

| *Order Granting Request For Ex Parte Reexamination* | **Control No.**<br>90/014,624 | **Patent Under Reexamination**<br>10484511 | |
|---|---|---|---|
| | **Examiner**<br>ERON J SORRELL | **Art Unit**<br>3992 | **AIA (FITF) Status**<br>No |

*--The MAILING DATE of this communication appears on the cover sheet with the correspondence address--*

The request for *ex parte* reexamination filed 12/04/2020 has been considered and a determination has been made. An identification of the claims, the references relied upon, and the rationale supporting the determination are attached.

Attachments:  a)☐   PTO-892,   b)☑   PTO/SB/08,   c)☐   Other: _____

1. ☑   The request for *ex parte* reexamination is GRANTED.

 RESPONSE TIMES ARE SET AS FOLLOWS:

For Patent Owner's Statement (Optional):  TWO MONTHS  from the mailing date of this communication (37 CFR 1.530 (b)). **EXTENSIONS OF TIME ARE GOVERNED BY 37 CFR 1.550(c).**

For Requester's Reply (optional): TWO MONTHS from the **date of service** of any timely filed Patent Owner's Statement (37 CFR 1.535). **NO EXTENSION OF THIS TIME PERIOD IS PERMITTED.** If Patent Owner does not file a timely statement under 37 CFR 1.530(b), then no reply by requester is permitted.

| /ERON J SORRELL/<br>Primary Examiner, Art Unit 3992 | | |
|---|---|---|
| cc:Requester ( if third party requester ) | | |

Application/Control Number: 90/014,624                                    Page 2
Art Unit: 3992

### *Decision*

A Third Party has filed a Request for *Ex Parte*

Reexamination of claims 1-5, 9, 11, 12, 14, 17, 20-22, and 25-30

of U.S. Patent No. 10,484,511 to Shribman *et al.* ("the '511

Patent"). The Request for *Ex Parte* Reexamination ("the Request")

was granted a filing date of December 4, 2020.


Per MPEP 2240,

> "Within three months following the filing date of a request
> for an *ex parte* reexamination, an examiner will consider
> the request and determine whether or not a substantial new
> question of patentability affecting **any claim** of the patent
> is raised by the request and the prior art cited therein,
> with or without consideration of other patents or printed
> publications. A statement and any accompanying information
> submitted pursuant to § 1.501(a)(2) will not be considered
> by the examiner when making a determination on the request.
> The examiner's determination will be based on the claims in
> effect at the time of the determination, will become a part
> of the official file of the patent, and will be given or
> mailed to the patent owner at the address provided for in §
> 1.33(c) and to the person requesting reexamination."

The Request raises at least one Substantial New Question of

Patentability, therefore the Request has been **GRANTED.**

### *Listing of Prior Art*

The Third Party ("the Requester") alleges the existence of

one or more Substantial New Questions of Patentability (SNQ)

based on the following patent(s)/printed publications:

Application/Control Number: 90/014,624                          Page 3
Art Unit: 3992

    i.   Luotonen A., "Web Proxy Servers," Prentice Hall
        PTR, 1998 (ISBN 0-13-680612-0) ("Luotonen");

    ii.  Michael K. Reiter and Avid D, Rubin, "Crowds:
        Anonymity for Web Transactions," ACM Transactions on
        Information and System Security, Vol. 1, No. 1, Pages
        66-92 (November 1998) ("Crowds");

    iii. Wessels et al., RFC 2187, "Application of Internet
        Cache Protocol (ICP), version 2" (National Laboratory'
        for Applied Network Research, University of
        California, San Diego, September 1997) ("RFC 2187");

    iv.  U.S. Patent No. 6,701,374 to Gupta et al. ("Gupta");

    v.   Postal, J., "Internet Protocol", STD 5, RFC 791, DOI
        10.1 7487/ RFC0791, September 1981 ("RFC 791");

    vi.  D. Wessels and K. Claffy, "ICP and the Squid Web
        Cache," in IEEE Journal on Selected Areas in
        Communications, vol. 16, no. 3, pp. 345-357, April
        1998, doi: 10,1109/49.669043 ("Wessels");

    vii. Wessels, "Squid: The Definitive Guide," ISBN-10:
        9780596001629, ISBN-13: 978-0596001629, O'Reilly
        Media; 1st Ed. (January 1, 2004) ("Squid").


### *The Requester's Position*

The Requester has alleged the following SNQs which have

been organized/regrouped below for discussion purposes.


**Group I:** RFC 2187 in view of Wessels and further in view of

RFC 791 and Squid to raise SNQs over claims 1-5, 9, 11, 12, 14,

17, 20-22, and 25-30. This group of SNQs is based on proposed

rejections of claims 1-5, 9, 11, 12, 14, 17, 20-22, and 25-30 as

being obvious over RFC 2187 in view of Wessels and further in

Application/Control Number: 90/014,624                          Page 4
Art Unit: 3992

view of one or more of RFC 791 and Squid (see pages 31-56 of the
Request).


   **Group II:** Luotonen in view of RFC 791 to raise SNQs over
claims 1-5, 14, 17, 20-22, and 25-30. This group of SNQs is
based on proposed rejections of claims 1-5, 14, 17, 20-22, and
25-30 as being obvious over Loutonen in view of RFC 791 (see
pages 56-78 of the Request).


   **Group III:** Crowds to raise SNQs over claims 1-5, 14, 17,
20-22, 25-30. This group of SNQs is based on proposed rejections
of claims 1-5, 14, 17, 20-22, and 25-30 as being either
anticipated by Crowds, or obvious over Crowds in view of one or
more of RFC 2187 and RFC 791 (see pages 78-94 of the Request).


   **Group IV:** Gupta to raise SNQs over claims 1-5, 14, 17, 20-
22, and 25-30. This group of SNQs is based on proposed
rejections of claims 1-5, 14, 17, 20-22, and 25-30 as being
obvious over Gupta taken alone or Gupta in view of Loutonen and
RFC 2187 (see pages 94-113 of the Request).


### *Review of Prosecution History*

   The '511 Patent issued on November 19, 2019 having claims
1-30 with claim 1 being the only independent claim. The '511

Application/Control Number: 90/014,624                          Page 5
Art Unit: 3992

Patent matured from U.S. Patent Appl. No. 16/278,109 ("the '109

Application") which was filed February 17, 2019. The '109

Application was a continuation of U.S. Patent Appl. No.

15/957,950 filed on April 20, 2018, which was a continuation of

U.S. Patent Appl. No. 14/025,109 filed September 12, 2013, which

was a division of U.S. Patent Appl. No. 12/836,059 filed on July

14, 2010. The '511 Patent also claims priority to Provisional

Appl. No. 61/249,624 filed October 8, 2009.


    Independent claim 1, the only independent claim, is

representative and is reproduced below for convenience.

    *1. A method for fetching, by a first client device, a first*

    *content identified by a first content identifier and stored*

    *in a web server, for use with a first server that stores a*

    *group of IP addresses, the method by the first server*

    *comprising:*

        *receiving, from the first client device, the first*

        *content identifier;*

        *selecting, in response to the receiving of the first*

        *content identifier from the first client device, an IP*

        *address from the group;*

Application/Control Number: 90/014,624                                    Page 6
Art Unit: 3992

> *sending, in response to the selecting, the first*
>
> *content identifier to the web server using the*
>
> *selected IP address;*
>
> *receiving, in response to the sending, the first*
>
> *content from the web server; and*
>
> *sending the received first content to the first client*
>
> *device,*
>
> *wherein the first content comprises a web-page, an*
>
> *audio, or a video content, and wherein the first*
>
> *content identifier comprises a Uniform Resource*
>
> *Locator (URL).*

In reviewing the prosecution history of the '109
Application, the Examiner finds that a non-final Office action
was mailed on May 15, 2019, in which claims 1-30 (all pending
claims at the time) where rejected under 35 USC § 101 as being
directed toward non-statutory subject matter and under 35 USC §
103 as being unpatentable over Yu (US Pub. No. 2006/0212584) in
view of Kageyama (U.S. Pub. No. 20030097408).

A response to the May 15, 2019 Office action was filed on
May 31, 2019 which left the claims unchanged and presented
arguments traversing the 101 Rejections and the 103 Rejections.

On September 23, 2019, a Notice of Allowance was mailed
allowing claims 1-30 which included a statement as to the

Application/Control Number: 90/014,624                                    Page 7
Art Unit: 3992

reasons for allowance. The reasons for allowance is reproduced

below (emphasis in omitted).


> "*Claims 1-30 are considered allowable since when
> reading the claims in light of the specification, as per
> MPEP §2111.01 or Toro Co. v. White Consolidated Industries
> Inc., 199 F.3d 1295, 1301, 53 USPQ2d 1065, 1069 (Fed. Cir.
> 1999), none of the references of record alone or in
> combination disclose or suggest the combination of
> limitations specified in independent claim 1.*
>
> *For example, the independent claims contain
> limitations, the first server selecting, in response to the
> receiving of the first content identifier from the first
> client device, an IP address from the group; sending, in
> response to the selecting, the first content identifier to
> the web server using the selected IP address; receiving, in
> response to the sending, the first content from the web
> server; and. sending the received first content to the
> first client device. Therefore, the Examiner agrees that
> the limitations of the independent claims, within its
> environment, is allowable subject matter over the prior
> art, in light of the specification and in view of
> the Applicant's arguments.*"



With that, if a new reference of combination of references

teaches

> "*the first server selecting, in response to the receiving
> of the first content identifier from the first client
> device, an IP address from the group; sending, in response
> to the selecting, the first content identifier to the web
> server using the selected IP address; receiving, in
> response to the sending, the first content from the web
> server; and sending the received first content to the first
> client device*"

then that new reference or combination of references would raise

a SNQ.

Application/Control Number: 90/014,624                    Page 8
Art Unit: 3992

### *Substantial New Question(s) of Patentability*

**Group I:** The Request alleges RFC 2187 in view of Wessels and further in view of RFC 791 and Squid to raise SNQs over claims 1-5, 9, 11, 12, 14, 17, 20-22, and 25-30. Upon review and for the reasons discussed below, the Examiner agrees. RFC 2187 in view of Wessels and further in view of RFC 791 and Squid raises SNQs over claims 1-5, 9, 11, 12, 14, 17, 20-22, and 25-30.

### RFC 2187

RFC 2187 is a document describing the application of the internet cache protocol, version 2 (ICPv2) to web caching (see abstract). ICP is a message format used for communicating among web caches in order to exchange hints about the existence of URLs in neighboring caches. Caches exchange queries and replies to gather information for use in selecting the most appropriate location from which to retrieve an object (see page 2). ICP can operate in a hierarchy of web caches and is beneficial to speed up access to objects on the internet by reducing the amount of traffic generated by clients. The cache hierarchy may comprise neighbor (or sibling) caches at the same level and parent caches one level above (see page 4). This relationship is shown in figure 1 (reproduced below).

Application/Control Number: 90/014,624                              Page 9
Art Unit: 3992



FIGURE 1: A Simple Web cache hierarchy. The local cache can retrieve hits from sibling caches, hits and misses from parent caches, and some requests directly from origin servers.

In operation, a client makes a request to a web cache (for example an HTTP request). When the cache does not have the requested object, it may ask via ICP if a neighbor cache has the requested object. If any of the neighbor caches has the object (a neighbor hit), then the cache will request of object from them. If none of the neighbor caches has the requested object, the cache must forward the request to a parent cache, or the

Application/Control Number: 90/014,624                    Page 10
Art Unit: 3992

origin server directly (see page 7). If the initial caches has

the object, it is returned immediately to the client without the

need to issue ICP requests to other caches (see page 8).

Additionally, RFC 2187 describes the design of the protocol

including the formatting of the messages which include fields

for specifying the sender host address and the requesters host

address which are IP addresses (see page 18).


## Wessels

Wessels is a document detailing the implementation of the

internet cache protocol (ICP) as part of the Squid web caching

software suite. It provides the specific protocol implementation

of ICP including its message format, transport information, and

a comparison to HTTP (see pages 5-7). The document also provides

details as to the specific query algorithm which can be

configured such that specific or certain peers are queried or

excluded and the procedure for the collecting the replies (see

pages 7-8).


## RFC 791

RFC 791 is a memo documenting the Internet Protocol

specification which is a protocol that provides for transmitting

Application/Control Number: 90/014,624                          Page 11
Art Unit: 3992

blocks of data referred to as datagrams from sources to

destinations which are hosts identified by fixed length

addresses. The document describes the internet protocol as being

called on by host-to-host protocols in an internet environment

and calling on local network protocols to carry the datagram to

next destination (see page 1). Figure 1, reproduces below shows

the protocol relationship hierarchy.

The IP protocol is described as implementing addressing and

fragmentation as it basic functions. In operation, an internet

module resides in each host that participates in internet

communication and in each gateway interconnecting networks.

These modules share common rules for interpreting address fields

and have procedures for making routing decisions (see page 2).

The document also provides a model of operation for

transmitting a datagram from one application program to another

wherein the transmission includes one intermediate gateway. The

process involves the following sequence of events:

1) the sending application process prepares its data and

calls on its local internet module to send that data as a

datagram and also passes it the destination address;

2) the local internet module prepares a datagram header and

attaches the data to it, determines a local network address

which in this instance is the gateway address, and sends the

Application/Control Number: 90/014,624                    Page 12
Art Unit: 3992

datagram and the local network address to the local network
interface;

    3) the local network interface creates a local network
header and attaches the datagram to it, then sends that result
via the local network;

    4) the datagram arrives at the gateway where to local
network interface strips off the header, and transfers the
datagram to the local internet module, which determines from the
internet address that the datagram is to be forwarded to another
host in a second network, determines a local network address for
the destination host and calls on the local network interface
for that network to send the datagram;

    5) that local network interface creates a local network
header and attaches the datagram sending the result to the
destination host;

    6) the datagram is received at the destination host, where
the local network interface strips the header and hands the
result to the local internet module where it is determined that
the datagram is for an application program on that host;

    7) the data is then passed to the application program in
response to a system call passing the source address as a result
of the call (see pages 5 and 6).


**<u>Squid</u>**

Application/Control Number: 90/014,624                    Page 13
Art Unit: 3992

    Squid is a user manual for the Squid web cache software and
provides all of the details for its installation, configuration,
and maintenance. Chapter 6 of the book provides specific details
of the "Access Control Elements" which are described as the
building blocks of Squid and are how IP addresses, hostnames,
and URLs are specified (see pages 54-56).


**Group I - Analysis**

    As shown above, the combination of RFC 2187 and Wessels,
can be reasonably interpreted as disclosing subject matter
relevant to the limitations in independent claim 1 found to be
patentable during the prior examination(s) of the '511 Patent.
Neither reference was cited during any previous prosecution of
the '511 Patent. Moreover, there is a substantial likelihood
that a reasonable examiner would consider these teachings
important in deciding the patentability of the '511 Patent, and
therefore the combination is seen as raising a SNQ over
independent claim 1, which question has not been decided in a
previous examination of the '511 Patent. Since dependent claim
carry with them all of the limitations of the claim from which
it depends, for the same reasons above, the combination is seen
as raising a SNQ over dependent claims 2-5, 9, 11, 12, 14, 17,
20-22, and 25-30. Additionally, since the combination of RFC
2187 and Wessels is as raising a SNQ over claims 1-5, 9, 11, 12,

Application/Control Number: 90/014,624                          Page 14
Art Unit: 3992

14, 17, 20-22, and 25-30, it follows that RFC 2187 and Wessels

in view of RFC 791 and Squid would also raise a SNQ over claims

1-5, 9, 11, 12, 14, 17, 20-22, and 25-30.


**Group II:** The Request alleges that Luotonen in view of RFC 791

raises SNQs over claims 1-5, 14, 17, 20-22, and 25-30. Upon

review, and for the reasons discussed below, the Examiner

agrees. Luotonen in view of RFC 791 raises a SNQ over claims 1-

5, 14, 17, 20-22, and 25-30.


## Luotonen

Luotonen is a book titled "Web Proxy Servers" which

provides an overview of different types of proxy servers,

protocols used for communications involving proxy servers, and

functions of proxy servers including caching and security

services (see Table of Contents). Luotonen defines "a proxy

server" as an intermediary server that accepts request from

client and forwards them either to other proxy servers, or the

origin server (e.g. the web server that hosts the resource, such

as a webpage); or services the request from its own cache (see

page 4).

Luotonen provides several examples of network

configurations including proxy servers including an example of a

simple configuration with a single proxy server located between

Application/Control Number: 90/014,624                    Page 15
Art Unit: 3992

a client and a content server as shown in figure 1.2 (reproduced

below),



Figure 1.2   A firewall using a single dual-homed host running a proxy server.

and also a more complex example including a hierarchal structure

of proxy servers shown at figure 2.1 (reproduced below) (see

pages 8 and 23).



Figure 2.1   Departmental proxy servers daisy-chained to a corporate firewall proxy server.

Application/Control Number: 90/014,624                    Page 16
Art Unit: 3992

Luotonen also details certain protocols used by the clients, the proxy servers, and the origin servers including the HyperText Transfer protocol (HTTP) and the Internet Cache Protocol (ICP). Loutonen teaches that HTTP, which is the primary protocol used for transferring web documents, is a request/response protocol wherein clients send a request to a server and the server sends back a response to the client. The HTTP request consists of a method (e.g. GET, POST), a target URL, protocol version identifier, and a set of headers. The HTTP response consists of a protocol version identifier, a response status line, response headers, and the requested content resource (see pages 39-40).

Luotonen teaches the ICP is a protocol used for querying proxy servers for cached documents typically used by proxy servers querying other proxy servers (see page 115). Unlike HTTP, which is a TCP-based protocol, ICP is a UDP-based protocol. ICP is useful in determining which proxy servers have a desired resource cached in order to make a decision about which proxy server should be contacted via HTTP to request the resource. ICP requests comprise a URL of the resource being queried and the ICP response is either a "HIT" or a "MISS" (see page 116). Luotonen discloses that proxy servers can have zero or more sibling relationships and as well as zero or more parent/child relationships. When trying to locate a cached copy, siblings are queried first and if a "HIT" is not returned, the

Application/Control Number: 90/014,624                    Page 17
Art Unit: 3992

parents are queried next (see page 17). These sibling and

parent/child relationships are shown in figure 6.3 (reproduced

below).



Figure 6.3   ICP used among departmental proxy servers (siblings), and by a
departmental proxy server to the firewall proxies (parents). Sibling style
ICP queries among firewall proxies is not necessary because the parent ICP
from departmental proxy servers have already queried the entire cluster of
firewall proxies.

## RFC 791

RFC 791 is a memo documenting the Internet Protocol

specification which is a protocol that provides for transmitting

blocks of data referred to as datagrams from sources to

destinations which are hosts identified by fixed length

addresses. The document describes the internet protocol as being

called on by host-to-host protocols in an internet environment

and calling on local network protocols to carry the datagram to

Application/Control Number: 90/014,624                          Page 18
Art Unit: 3992

next destination (see page 1). Figure 1, reproduces below shows
the protocol relationship hierarchy.

The IP protocol is described as implementing addressing and
fragmentation as it basic functions. In operation, an internet
module resides in each host that participates in internet
communication and in each gateway interconnecting networks.
These modules share common rules for interpreting address fields
and have procedures for making routing decisions (see page 2).

The document also provides a model of operation for
transmitting a datagram from one application program to another
wherein the transmission includes one intermediate gateway. The
process involves the following sequence of events:

1) the sending application process prepares its data and
calls on its local internet module to send that data as a
datagram and also passes it the destination address;

2) the local internet module prepares a datagram header and
attaches the data to it, determines a local network address
which in this instance is the gateway address, and sends the
datagram and the local network address to the local network
interface;

3) the local network interface creates a local network
header and attaches the datagram to it, then sends that result
via the local network;

Application/Control Number: 90/014,624                    Page 19
Art Unit: 3992

    4) the datagram arrives at the gateway where to local
network interface strips off the header, and transfers the
datagram to the local internet module, which determines from the
internet address that the datagram is to be forwarded to another
host in a second network, determines a local network address for
the destination host and calls on the local network interface
for that network to send the datagram;

    5) that local network interface creates a local network
header and attaches the datagram sending the result to the
destination host;

    6) the datagram is received at the destination host, where
the local network interface strips the header and hands the
result to the local internet module where it is determined that
the datagram is for an application program on that host;

7) the data is then passed to the application program in
response to a system call passing the source address as a result
of the call (see pages 5 and 6).


**Group II - Analysis**

    As shown above, Luotonen, which has never been cited during
any previous prosecution of the '511 Patent, by itself can be
reasonably interpreted as disclosing subject matter relevant to
the limitations in independent claim 1 found to be patentable
during the prior examination(s) of the '511 Patent. Moreover,

Application/Control Number: 90/014,624                    Page 20
Art Unit: 3992

there is a substantial likelihood that a reasonable examiner
would consider these teachings important in deciding the
patentability of the '511 Patent. With that, Luotonen is seen as
raising a SNQ over independent claim 1, which question has not
been decided in a previous examination of the '511 Patent. Since
dependent claim carry with them all of the limitations of the
claim from which it depends, for the same reasons above,
Luotonen is seen as raising a SNQ over dependent claims 2-5, 14,
17, 20-22, and 25-30. Additionally, since Luotonen by itself is
seen as raising a SNQ over claims 1-5, 14, 17, 20-22, and 25-30,
it follows that Luotonen in view of RFC 791 would also raise a
SNQ over claims 1-5, 14, 17, 20-22, and 25-30.


**Group III:** The Request alleges that Crowds raises SNQs over
claims 1-5, 14, 17, 20-22, 25-30. Upon review, and for the
reasons discussed below, the Examiner agrees. Crowds raises a
SNQ over claims 1-5, 14, 17, 20-22, 25-30.


## Crowds

Crowds is a document about a software system for protecting
users' anonymity on the internet which gets its name from the
notion of "blending into a crowd" to conceal identity. Crowds
operates by grouping users into large geographically diverse
groups that collectively issues requests on behalf of its

Application/Control Number: 90/014,624                    Page 21
Art Unit: 3992

members thus masking the identity of source of the request

because it could have come from any member of the crowd (see

Abstract).

In order to execute web transactions, a user first joins a

crowd of other users. The user then issues a request to a web

server. The users request is first passed to another random

member of the crowd, possibly even itself. That member of the

crowd can either submit the request directly to the web server

or forward it another randomly chosen member of the crowd where

that member chooses to submit or forward the request

independently (see page 67).

In a more detailed explanation of the system, Crowds

discloses that a user is represented by a process called a

"jondo" that runs on the user's computer. When started, the

jondo contacts a server called a "blender" to request admittance

into the crowd. Upon admission, the server informs the jondo of

the current crowd membership and information for participating

in the crowd (see pages 73). Crowds later discloses that this

information includes each jondos account name, its IP address,

and its port number (see page 89).

Crowds describes the jondos as a proxy that accepts

requests from the user's browser and establishes a random path

of jondos that carries its user's transactions to and from their

intended web servers (see page 73). Replies from the server

Application/Control Number: 90/014,624                    Page 22
Art Unit: 3992

travel the same path as the requests, but in reverse (see page

74). This process is shown illustratively at figure 2

(reproduced below).



Fig. 2. Paths in a crowd (the initiator and web server of each path are labeled the same).

## Group III - Analysis

As shown above, the Crowds which has never been cited

during any previous prosecution of the '511 Patent, can be

reasonably interpreted as disclosing subject matter relevant to

the limitations in independent claim 1 found to be patentable

during the prior examination(s) of the '511 Patent. Moreover,

there is a substantial likelihood that a reasonable examiner

would consider these teachings important in deciding the

patentability of the '511 Patent, and therefore is seen as

raising a SNQ over independent claim 1, which question has not

Application/Control Number: 90/014,624                    Page 23
Art Unit: 3992

been decided in a previous examination of the '511 Patent. Since

dependent claim carry with them all of the limitations of the

claim from which it depends, for the same reasons above, Crowds

is seen as raising a SNQ over dependent claims 2-5, 14, 17, 20-

22, 25-30.


**Group IV:** The Request alleges that Gupta raises SNQs over claims

1-5, 14, 17, 20-22, and 25-30. Upon review and for the reasons

discussed below, the Examiner agrees. Gupta raises a SNQ over

claims 1-5, 14, 17, 20-22, and 25-30.


<u>**Gupta**</u>

    Gupta teaches a method and system for dynamic proxy

insertion in network traffic flow. In Gupta's system, a request

directed toward a server or response directed toward a client

may be altered to insert a plurality of intermediate or final

destination designations thereby altering the paths of a

requests/response and the paths of subsequent requests/response

(see lines 40-47 of column 8). Gupta's system is shown in figure

3 (reproduced below).

Application/Control Number: 90/014,624                    Page 24
Art Unit: 3992



FIG. 3

In operation, a client sends a request that is directed toward the origin server in which a resource is permanently stored and/or is created. Gupta also teaches that other locations may temporarily store the requested resource. The requests are HTTP requests that identify the origin server via a URL. The request may also comprise none or more more thru-proxy tags that identify another possible destination. The thru-proxy tags comprise a proxy identifier which may be an IP address (see line 62 of column 8 to line 8 of column 9).

Gupta teaches the path taken by the request may include none or more intermediaries which may be able to satisfy the

Application/Control Number: 90/014,624                    Page 25
Art Unit: 3992

request without having to pass it to the origin server. If the
request is to be sent to the origin server and the request
includes a thru-proxy tag, the request will be sent to the proxy
identified in the thru-proxy tag before it is sent to the origin
server (see lines 46-64 of column 9).

Gupta discloses that an entity that originates, receives
and/or processes a request may add one or more thru-proxy tags
to a request, and an entity that is identified in a thru-proxy
tag may remove it. Gupta also discloses an entity that receives
and/or processes a response may add a thru-proxy tag to the
response and if a response is received by a client with a thru-
proxy tag, that client will retain that information (see line 65
of column 9 to line 6 of column 10). Additionally, Gupta teaches
that there may be multiple thru-proxy designations such that
alternate thru-proxy tags may be used for redundancy or load
balancing purposes (see lines 58-64 of column 10).


**Group IV - Analysis**

As shown above, Gupta, which has never been cited during
any previous prosecution of the '511 Patent, by itself can be
reasonably interpreted as disclosing subject matter relevant to
the limitations in independent claim 1 found to be patentable
during the prior examination(s) of the '511 Patent. Moreover,
there is a substantial likelihood that a reasonable examiner

Application/Control Number: 90/014,624                    Page 26
Art Unit: 3992

would consider these teachings important in deciding the

patentability of the '511 Patent. With that, Gupta is seen as

raising a SNQ over independent claim 1, which question has not

been decided in a previous examination of the '511 Patent. Since

dependent claim carry with them all of the limitations of the

claim from which it depends, for the same reasons above, Gupta

is seen as raising a SNQ over dependent claims 2-5, 14, 17, 20-

22, and 25-30.


### *Summary of proposed SNQs*

The Examiner agrees with the following groups of proposed SNQs:

**Group I:** Luotonen in view of RFC 791 to raise SNQs over

claims 1-5, 14, 17, 20-22, and 25-30.

**Group II:** RFC 2187 in view of Wessels and further in view

of RFC 791 and Squid to raise SNQs over claims 1-5, 9, 11, 12,

14, 17, 20-22, and 25-30.

**Group III:** Crowds to raise SNQs over claims 1-5, 14, 17,

20-22, 25-30.

**Group IV:** Gupta to raise SNQs over claims 1-5, 14, 17, 20-

22, and 25-30.


### *Scope of the Proceeding*

Claims 1-30 are subject to reexamination. While claims 6-8,

10, 13, 15, 16, 18, 19, 22, and 24 were not specifically

Application/Control Number: 90/014,624                          Page 27
Art Unit: 3992

identified in the Request, they are being added by the Office

*sua sponte* because they all depend from claim 1 which has been

shown above to have a substantial new question of patentability.

Per MPEP 2243,

> The decision to reexamine any claim for which reexamination
> has not been requested under 35 U.S.C. 302 lies within the
> sole discretion of the Office, to be exercised based on the
> individual facts and situation of each individual case. If
> the Office chooses to reexamine any claim for which
> reexamination has not been requested under 35 U.S.C. 302,
> it is permitted to do so.


### *Extensions of Time*

Extensions of time under 37 CFR 1.136(a) will not be

permitted in these proceedings because the provisions of 37 CFR

1.136 apply only to "an applicant" and not to parties in a

reexamination proceeding. Additionally, 35 U.S.C. 305 requires

that ex parte reexamination proceedings "will be conducted with

special dispatch" (37 CFR 1.550(a)). Extensions of time in ex

parte reexamination proceedings are provided for in 37 CFR

1.550(c).

Application/Control Number: 90/014,624                          Page 28
Art Unit: 3992

### *Conclusion*

ALL correspondence relating to this ex parte reexamination

proceeding should be directed as follows:


**Please mail any communications to:**

Attn: Mail Stop *"Ex Parte Reexam"*
Central Reexamination Unit
Commissioner for Patents
P. O. Box 1450 Alexandria VA 22313-1450

**Please FAX any communications to:**

(571) 273-9900
Central Reexamination Unit

**Please hand-deliver any communications to:**

Customer Service Window
Attn: Central Reexamination Unit
Randolph Building, Lobby Level
401 Dulany Street
Alexandria, VA 22314

**By EFS-Web**

Registered users of EFS-Web may alternatively submit
such correspondence via electronic filing system EFS-Web,
at

https://efs.uspto.gov/efile/myportal/efs-registered

EFS-Web offers the benefit of quick submission to the
particular area of the Office that needs to act on the
correspondence. Also, EFS-Web submissions are "soft
scanned" (i.e., electronically uploaded) directly into the
official file for the reexamination proceeding, which
offers parties the opportunity to review the content of
their submissions after the "soft scanning" process is
complete.

Application/Control Number: 90/014,624                                      Page 29
Art Unit: 3992

Any inquiry concerning this communication or earlier
communications from the Reexamination Legal Advisor or Examiner,
or as to the status of this proceeding, should be directed to
the Central Reexamination Unit at telephone number (571) 272-
7705.


        Signed:

        /ERON J SORRELL/
        Primary Examiner, Art Unit 3992

        Conferees:      /JOSEPH R POKRZYWA/
                        Primary Examiner, Art Unit 3992


        /M.F/
        Supervisory Patent Examiner, Art Unit 3992