# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# MARSHALL DIVISION

| | |
|---|---|
| LUMINATI NETWORKS LTD.,<br><br>      Plaintiff,<br><br>v.<br><br>NETNUT LTD.<br><br>      Defendant. | Case No.  2:20-CV-00188-JRG-RSP |

## LUMINATI'S OPPOSITION TO DEFENDANT'S MOTION TO STAY PENDING *EX PARTE* REEXAMINATION

# **TABLE OF CONTENTS**

I. INTRODUCTION ...................................................................................................................1

II. FACTUAL BACKGROUND..................................................................................................2

III. LEGAL STANDARD .............................................................................................................4

IV. ARGUMENT...........................................................................................................................5

   A. Whether A Stay Will Unduly Prejudice Or Present A Clear Tactical Disadvantage To The Nonmoving Party – Weighs Against A Stay.......................................................5

      1. Undue Prejudice to Luminati ...................................................................................5

      2. Clear Tactical Disadvantage to Luminati ................................................................7

   B. Whether A Stay Will Simplify The Issues In Question And Trial Of The Case – Weighs Against A Stay....................................................................................................8

   C. Whether Discovery Is Complete And Whether A Trial Date Has Been Set – Weighs Against A Stay................................................................................................................9

V. CONCLUSION........................................................................................................................9

# **TABLE OF AUTHORITIES**

### *Cases*

*Clinton v. Jones*, 520 U.S. 681, 706, 117 S. Ct. 1636, 137 L. Ed. 2d 945 (1997).............................4

*Cooper Techs. Co. v. Thomas & Betts Corp.*, No. 2:06-CV-242, 2008 U.S. Dist. LEXIS 25938 (E.D. Tex. Mar. 31, 2008)..................................................................................................9

*Datatreasury Corp. v. Wells Fargo & Co.*, 490 F.Supp.2d 749 (E.D. Tex. 2006).........................4

*Landis v. N. Am. Co.*, 299 U.S. 248, 255, 57 S.Ct. 163, 81 L.Ed. 153 (1936) ...............................4

Pro-Troll, Inc. v. Shortbus Flashers, LLC, No. 16-cv-04062-VC, 2016 U.S. Dist. LEXIS 202857 (N.D. Cal. Dec. 23, 2016) ................................................................................................5

*Realtime Data LLC v. Actian Corp.*, No. 6:15-CV-463-RWS-JDL, 2016 U.S. Dist. LEXIS 187446 (E.D. Tex. Nov. 29, 2016).................................................................................4, 6

*Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*, No. 2:13CV213-JRG-RSP, 2015 U.S. Dist. LEXIS 20303 (E.D. Tex. Jan. 29, 2015) ...................................................................4, 5

*Smartflash LLC v. Apple, Inc.*, No. 6:13-cv-447, 2014 U.S. Dist. LEXIS 92615 (E.D. Tex. Jul. 8, 2014)..............................................................................................................................4, 5

*ThinkOptics, Inc. v. Nintendo of Am., Inc.*, No. 6:11-CV-455, 2014 U.S. Dist. LEXIS 128450 (E.D. Tex. Feb. 27, 2014) ................................................................................................6

### *Statutes*

35 U.S.C.S § 303.............................................................................................................................7

35 U.S.C.S § 314(a) ........................................................................................................................7

**I.       INTRODUCTION**

In filing a motion for stay based on *ex parte* reexaminations ("EPRs"), Defendants are trying to game the system by seeking to potentially delay this case for years while avoiding any estoppel that would limit Defendants' invalidity arguments in litigation following the EPRs. Luminati filed this action over nine months ago on June 11, 2020 asserting infringement of U.S. Patent Nos. 10,484,511 ("'511 Patent") and 10,637,968 ("'968 Patent") as well as claims of misappropriation of trade secrets under Federal and Texas State Law. Dkt. 1. NetNut waited until December 4, 2020, almost *six months* after receiving the complaint (and one month after serving its invalidity contentions in this case), to file an EPR request for the '511 Patent followed by an EPR request against the '968 Patent a month later. Exhibits A and B. At the same time, NetNut chose to avoid the faster statutory time limitations required in an *inter partes* review ("IPR") and associated estoppel limitations prohibiting NetNut from asserting any invalidity ground that it could have raised in an IPR. In other words, NetNut is attempting to achieve a tactical advantage by delaying the litigation for an *ex parte* proceeding that could last over two years while preserving its ability to assert any invalidity defense in this action.

According to current U.S. Patent and Trademark Office ("PTO") statistics, over 92% of requests for EPR are *granted* for review by the PTO. Exhibit C at 1. However, in only about 13% of the EPR cases are all the challenged claims cancelled. *Id.* In addition, patents subject to EPR on average endure an overall reexamination pendency (from filing date to certificate issue date) of over 25 months. *Id.* at 2. With a trial date in this case set for November 1, 2021, granting a stay would likely mean delaying adjudication of Luminati's claims until January 2023, *i.e.*, 14 months after the trial date, or later, despite a very low chance that all the asserted claims would be dismissed by the EPRs. Dkt. 41 at 1.

1

Given (*i*) Lumninati's interest in timely litigating claims, including trade secret claims involving witnesses currently employed by NetNut, (*ii*) NetNut's unreasonable delay in requesting the EPRs, (*iii*) NetNut's decision to request EPRs instead of more expedient IPRs, (*iv*) the potentially significant delay a stay would cause well beyond the trial date, (*v*) the lack of estoppel providing no simplification of NetNut's invalidity arguments, and (*vi*) NetNut's status as a competitor to Luminati in the marketplace, NetNut's request for a stay should be denied.

## II.   FACTUAL BACKGROUND

On June 11, 2020, Luminati filed its complaint of infringement of the Asserted Patents and claims of trade secret misappropriation involving NetNut employees Jeffy Binhas and Yakub Kalvo, each of whom were previously employed by Luminati as sales managers and have admitted to communicating with Luminati's customers within the one-year period of the non-compete clause of their employment agreements.  Dkt. 1; Dkt. 36-3.  Following service of the complaint, the parties exchanged discovery, including Luminati's service of its original infringement contentions on September 9, 2020 and amended infringement contentions on December 4, 2020, December 31, 2020, and January 27, 2021, and NetNut's service of invalidity contentions on November 4, 2020.  In NetNut's invalidity contentions, NetNut identified 37 different references as prior art, eight of which NetNut called out as *anticipating* of one or both of the '511 and '968 patents.  Exhibit D at 6-8, 23-37.

On December 4, 2020, almost *six months* after filing the complaint (and one month after serving its invalidity contentions in this case), NetNut filed a request to the PTO for EPR of the '511 patent ("'511 EPR Request") identifying eight references as allegedly invalidating prior art.[1]

---

[1] The '511 Patent EPR request asserts the following references: Luotonen A., "Web Proxv Servers," Prentice Hall PTR, 1998 (ISBN 0-13-680612-0) ("Luotonen"); Wessels *et al.*, RFC 2187, "Application of Internet Cache Protocol (ICP), version 2" (National Laboratory for Applied

Exhibit A at 6 (listed as exhibits F-M). On January 12, 2021, *seven months* after receiving the complaint (and two months after serving its invalidity contentions in this case), NetNut filed a request to the PTO for EPR of the '968 patent identifying a set of ten references as allegedly invalidating prior art,[2] some of which overlapping with NetNut's earlier EPR request. Exhibit B at 5 (listed as exhibits F-H, J, and M-R). In the EPR requests, NetNut omitted numerous prior art references found in its invalidity contentions, including six of the eight references NetNut called out as *anticipating* of one or both of the '511 and '968 patents.[3] On January 21, 2021 and March 3, 2021, the PTO granted NetNut's requests for EPRs as to the '511 and '968 patents, respectively.

---

Network Research, University of California, San Diego, September 1997) ("RFC 2187"); D. Wessels and K. Claffy, "ICP and the Squid Web Cache," in IEEE Journal on Selected Areas in Communications, vol. 16, no. 3, pp. 345-357, April 1998, doi: 10.1109/49.669043 ("Wessels"); Michael K. Reiter and Aviel D. Rubin, "Crowds: Anonymity for Web Transactions," ACM Transactions on Information and System Security, Vol. 1, No.1, Pages 66-92 (November 1998) ("Crowds"); U.S. Patent No. 6,701,374 to Gupta *et al*. ("Gupta"); Postel, J., "Internet Protocol", STD 5, RFC 791, DOI 10.17487/RFC0791, September 1981 ("RFC 791"); Wessels, "Squid: The Definitive Guide," ISBN-l0: 9780596001629, ISBN-13: 978-0596001629, O'Reilly Media; 1st Ed. (January 1, 2004) ("Wessels II"); and Berners-Lee, T., Masimer, L., and M. McCahill, "Uniform Resource Locators (URL)", RFC 1738, DOI 10.17487/RFC1738, December 1994 ("RFC 1738").

[2] The '968 Patent EPR request asserts the following references: Gupta; U.S. Patent No. 6,513,061 to Ebata *et al.* ("Ebata"); Selected pages from the web site proxifier.com as of Feb. 2008 ("Proxifier"); Proxychains source code, *available* at http://old-releases.ubuntu.com/ubuntu/pool/universe/p/proxychains/ (October 20, 2004) ("Proxychains"); Rekhter, Y, Moskowitz, B., Karrenberg, D., de Groot, G., and E. Lear, "Address Allocation for Private Internets", BCP 5, RFC 1918, DOl 10.17487/RFCI918, February 1996 ("RFC 1918"); Droms, R., "Dynamic Host Configuration Protocol", RFC 2131, DOI 10.17487/RFC2131, March 1997 ("RFC 2131"); Fielding, R., Gettys, J., Mogul, J., Frystyk, H., Masinter, L., Leach, P., and T. Berners-Lee, "Hypertext Transfer Protocol-- HTTP/1.l", RFC 2616, DOI 10.17487/RFC2616, June 1999 ("RFC 2616"); Woundy, R and K. Kinnear, "Dynamic Host Configuration Protocol (DHCP) Leasequery", RFC 4388, DOI 10.17487/RFC4388, February 2006 ("RFC 4388"); Khare, R. and S. Lawrence, "Upgrading to TLS Within HTTP/1.l", RFC 2817, DOI 10.17487/RFC2817, May 2000 ("RFC 2817").

[3] *MorphMix - A Peer-to-Peer-based System for Anonymous Internet Access*, by Marc Rennhard ("MorphMix"); U.S. Patent Publication No. 2008/0196098 to Cottrell *et al* ("Cottrell"); Japanese Patent Application Publication H11-355302 ("Yokoi"); .S. Patent No. 6,785,705 to Kocherlakota ("Kocherlakota"); HAProxy Reference Manual, version 1.2.18, by Willy Tarreau ("HAProxy Reference Manual"); and U.S. Patent No. 6,389,462 to Cohen *et al*. ("Cohen")

3

The parties served infringement and invalidity contentions respectively, substantially completed their document productions on March 10, 2021, propounded interrogatories on March 17, 2021 and are currently engaged in electronic discovery. The deadline to complete fact discovery is June 14, 2021 and a trial date has been set for November 1, 2021. Dkt. 41 at 1.

### III. LEGAL STANDARD

"The district court has the inherent power to control its own docket, including the power to stay proceedings." *Rembrandt Wireless Techs., LP v. Samsung Elecs. Co.*, No. 2:13CV213-JRG-RSP, 2015 U.S. Dist. LEXIS 20303, at *6 (E.D. Tex. Jan. 29, 2015), citing *Clinton v. Jones*, 520 U.S. 681, 706, 117 S. Ct. 1636, 137 L. Ed. 2d 945 (1997). "The party seeking a stay bears the burden of showing that such a course is appropriate." *Realtime Data LLC v. Actian Corp.*, No. 6:15-CV-463-RWS-JDL, 2016 U.S. Dist. LEXIS 187446, at *6 (E.D. Tex. Nov. 29, 2016), citing *Landis v. N. Am. Co.*, 299 U.S. 248, 255, 57 S.Ct. 163, 81 L.Ed. 153 (1936). "A stay pending an administrative proceeding is not automatic; rather, it must be based upon the circumstances of the individual case before the court." *Id.*, at *6-7, citing *Datatreasury Corp. v. Wells Fargo & Co.*, 490 F.Supp.2d 749, 755 (E.D. Tex. 2006). "Courts often consider the relationship of the parties" and "are generally reluctant to stay proceedings when the parties are direct competitors." *Smartflash LLC v. Apple, Inc.*, No. 6:13-cv-447, 2014 U.S. Dist. LEXIS 92615, at *17 (E.D. Tex. Jul. 8, 2014) (internal citations omitted).

"In deciding whether to stay litigation pending patent reexamination and *inter partes* review, courts usually consider three factors: (1) whether a stay will unduly prejudice or present a clear tactical disadvantage to the nonmoving party; (2) whether a stay will simplify the issues in question and trial of the case; and (3) whether discovery is complete and whether a trial date has been set." *Rembrandt Wireless Techs.,* 2015 U.S. Dist. LEXIS 20303, at *7.

### IV. ARGUMENT

The three factors considered by courts in deciding whether to stay litigation pending reexamination weigh in favor of denying a stay. *Rembrandt Wireless Techs.,* 2015 U.S. Dist. LEXIS 20303, at *7. Based on the individual circumstances of this case, NetNut's request for a stay should be denied.

### A. Whether A Stay Will Unduly Prejudice Or Present A Clear Tactical Disadvantage To The Nonmoving Party – Weighs Against A Stay

#### 1. *Undue Prejudice to Luminati*

Delaying this action would prejudice Luminati as a stay would allow its competitor NetNut to continue infringing activities in the marketplace. Luminati and NetNut are both in the proxy network industry, including with common customers as evidenced by Luminati's trade secret claims. The relationship between the parties is an important consideration when deciding a stay and such direct competition weighs against granting a stay. *Smartflash LLC v. Apple, Inc.*, 2014 U.S. Dist. LEXIS 92615, at *18 (E.D. Tex. Jul. 8, 2014) (internal citations omitted). As discussed in *Pro-Troll, Inc. v. Shortbus Flashers*, *LLC*, U.S. Dist. LEXIS 202857 (2016), the tactical use of reexaminations for a stay is particularly prejudicial to a plaintiff. *Id* at 2-3. The Court in *PT* denied such a stay even though the Defendant in that case filed its *ex parte* reexamination request shortly after the filing of the lawsuit.

> The choice of ex parte reexamination was strategically advantageous to Shortbus Flashers because the result of the reexamination will have no estoppel effect on Shortbus Flashers's arguments here. In other words, even if the PTO decided not to invalidate the patent after reexamination, Shortbus Flashers could continue to press an invalidity argument here. This is in contrast to inter partes review, which is 'guaranteed to finally resolve at least some issues of validity. Thus, the ex parte reexamination process is much less likely to advance the ball in this case. Meanwhile, Pro-Troll, which is a direct competitor of Shortbus Flashers, would be prevented from asserting its patent rights in court for as long as two years, with Shortbus Flashers having effectively pressed the pause button on the litigation while hardly needing to lift a finger. This argues against a stay. This is so even

>acknowledging that Shortbus Flashers was diligent in seeking ex parte reexamination shortly after this lawsuit was filed.

*PT*, 2016 U.S. Dist. LEXIS 202857, *2-3 (internal citations omitted).

Further, in contrast to *PT*, NetNut unreasonably delayed almost *six months* before requesting the first EPR. A defendant's unreasonable delay in filing an IPR with the PTO may weigh against the defendant. *Realtime Data LLC v. Actian Corp.*, 2016 U.S. Dist. LEXIS 187446, at *16 (E.D. Tex. Nov. 29, 2016). In the case of an EPR, the prejudice is even greater given the lack of statutory time limit and average length of over two years. Here, NetNut waited until December 4, 2020, well after the filing of the complaint on June 11, 2020, to file the first EPR request for the '511 patent. NetNut waited another month, until January 12, 2021, to file the second EPR request for the '968 patent. Should a stay be granted, NetNut's delay, combined with the PTO's overall average pendency for EPRs exceeding 25 months, would ultimately delay Luminati's interest in adjudicating the claims well beyond the November 1, 2021 trial date, possibly to January 2023 or later. Moreover, should NetNut be dissatisfied with the decisions in either EPR, it may appeal to the Patent Trial and Appeal Board ("PTAB") and the Federal Circuit resulting in even greater delay and prejudice to Luminati. *ThinkOptics, Inc. v. Nintendo of Am., Inc.*, No. 6:11-CV-455, 2014 U.S. Dist. LEXIS 128450, at *5 (E.D. Tex. Feb. 27, 2014).

In addition, separate from its patent infringement claims, Luminati also asserts two counts of misappropriation of trade secrets. The trade secret claims involve current NetNut employees Jeffy Binhas and Yakub Kalvo. Messrs. Binhas and Kalvo were previously employed by Luminati as sales managers in contact with Luminati's customers and are now employed by NetNut in a sales capacity. Dkt. 1 at 15-17. Messrs. Binhas and Kalvo have admitted to contacting Luminati customers within the one-year non-compete clause of their employment contracts, and NetNut agrees that they have information relevant to these claims. Dkt. 36-3; Exhibit E at 1. Should this

6

case be stayed, Luminati would be prejudiced in pursuing these secrets claims. With EPRs averaging an overall pendency of over 25 months, a stay would potentially delay this case until January 2023 or later. Such a lengthy delay would prejudice Luminati in its efforts to obtain evidence related to its trade secret claims, such as fact discovery of the witnesses including Messrs. Binhas and Kalvo. Thus, this consideration weighs against a stay.

### 2. *Clear Tactical Disadvantage to Luminati*

For the reasons provided above by *PT*, the requested stay would provide a clear tactical disadvantage to Luminati. NetNut made a strategic decision to pursue EPRs for the '511 and '968 patents and not IPRs. Under 35 U.S.C.S § 303, with EPRs, third parties have a lower standard at the PTO, *i.e.*, "a substantial new question of patentability," as compared to the higher standard under 35 U.S.C.S § 314(a) for IPRs, *i.e.*, "a reasonable likelihood that the petitioner would prevail with respect to at least 1 of the claims challenged in the petition."

In the EPRs, NetNut chose not to cite numerous allegedly *anticipating* prior art references that NetNut did cite in its invalidity contentions. For example, NetNut chose not to cite MorphMix, Cottrell, Yokoi, Kocherlakota, HAProxy, and Cohen, all of which NetNut asserted as anticipating prior art in this case, presumably in order to avoid having these references tarnished by the reexaminations. In its motion, NetNut states it is "willing to stipulate that it will not assert the prior art grounds being raised in the EPRs at trial in this case if a stay is granted." Dkt. 73 at 11. Notwithstanding, given the limited prior art raised by NetNut in the EPRs, should a stay be granted, NetNut would be assured a tactical advantage of two chances at a potentially dispositive defense: (*i*) one based on a first set of prior art at the EPRs (with a stay in this case), and (*ii*) another based on a second set or prior art (when this case ultimately proceeds). *Smartflash*, 2014 U.S. Dist. LEXIS 92615 at 17 (internal citations omitted). NetNut would keep this advantage regardless of whether it stipulates as offered. Dkt. 73 at 8.

Additionally, on average, EPRs endure an overall reexamination pendency (from filing date to certificate issue date) of over 25 months. Exhibit C at 1. In contrast, IPRs typically require 18 months for resolution (a statutory 6-month institution period followed by a 1-year determination period).[4] NetNut's own delay, combined with its strategic decision not to avail itself of more expedient IPRs, but rather the typically slower EPRs, would even further delay this case should a stay be granted. This puts Luminati at a tactical disadvantage of adjudicating its claims, especially its fact-intensive trade secret claims involving witnesses that could become unavailable. Thus, this consideration also weighs against a stay.

### B. Whether A Stay Will Simplify The Issues In Question And Trial Of The Case – Weighs Against A Stay

As discussed above, regardless of whether NetNut stipulates that "it will not assert the prior art grounds being raised in the EPRs at trial in this case if a stay is granted" (Dkt. 73 at 11), NetNut will not be limited from asserting numerous invalidity grounds asserted in its invalidity contentions. Exhibit D. For example, NetNut charted references MorphMix, Cottrell, Yokoi, Kocherlakota, HAProxy, and Cohen in their invalidity contentions, none of which have been cited in the EPRs. *Id*. at 24-37. Further, NetNut includes theories in its invalidity contentions other than prior art, including indefiniteness, enablement, written description, and on-sale bar activity. *Id*. at 103-133. Thus, it is unlikely that the EPRs, applying a limited set of prior art, would simplify the issues in this case in a meaningful way. Moreover, given the speculative nature of EPRs and the likelihood that some of the patent's claims will survive reexamination, EPRs "may only simplify the case to a limited degree." *Cooper Techs. Co. v. Thomas & Betts Corp.*, No. 2:06-CV-

---

[4] In some cases, the Director may, for good cause shown, extend the 1-year period by not more than 6 months.

8

242, 2008 U.S. Dist. LEXIS 25938, at *4 (E.D. Tex. Mar. 31, 2008).  As discussed above, on average only 13% of EPRs result in all challenged claims being cancelled.

In addition, Luminati also asserts trade secret claims, none of which would be simplified by the EPRs.  NetNut admits that these "claims for misappropriation of trade secrets may not result in simplification due to a stay."  Dkt. 73 at 8.  Rather, should a stay be granted, it is likelier that Luminati's ability to gather evidence related to these claims would be hampered by the passage of time.  Accordingly, this factor also weighs against a stay.

### C. Whether Discovery Is Complete And Whether A Trial Date Has Been Set – Weighs Against A Stay

A trial date has been set for November 1, 2021.  The substantial completion of document deadline has passed.  Infringement and invalidity contentions have been exchanged.  The claim construction process has concluded.  The parties have issued interrogatories to each other and responses are due soon.  The parties are in the midst of completing e-discovery and will soon be taking fact depositions, with a fact discovery cutoff deadline less than two months away on June 14, 2021.  Thus, while all discovery is not complete, it is headed to completion in the near future.  With the PTO's overall average pendency for EPRs exceeding 25 months, a stay in this case would potentially delay adjudication of Luminati's claims until January 2023, *i.e.*, 14 months after the trial date, or later.  Thus, this factor also weighs against a stay.

### V. CONCLUSION

For the foregoing reasons, Luminati respectfully requests that the Court deny NetNut's motion to stay pending *ex parte* reexaminations.

Dated: March 22, 2021                                  Respectfully submitted,

By: */s/ Ronald Wielkopolski*

J. Mark Mann
State Bar No. 12926150
mark@themannfirm.com
G. Blake Thompson
State Bar No. 24042033
blake@themannfirm.com
MANN | TINDEL | THOMPSON
300 West Main Street
Henderson, Texas 75652
(903) 657-8540
(903) 657-6003 (fax)

Amadou Kilkenny Diaw
Ronald Wielkopolski
RuyakCherian LLP
1901 L St. NW, Suite 700
Washington, DC 20036

Korula T. Cherian
Robert Harkins
RuyakCherian LLP
1936 University Ave, Ste. 350
Berkeley, CA 94704

S. Calvin Capshaw
State Bar No. 03783900
Elizabeth L. DeRieux
State Bar No. 05770585
Capshaw DeRieux, LLP
114 E. Commerce Ave.
Gladewater, TX 75647
Telephone: 903-845-5770
ccapshaw@capshawlaw.com
ederieux@capshawlaw.com

*Attorneys for Plaintiff
Luminati Networks Ltd.*

**CERTIFICATE OF SERVICE**

I hereby certify that all counsel of record who are deemed to have consented to electronic service are being served this 22nd day of March, 2021, with a copy of this document via electronic mail.

*/s/ Ronald Wielkopolski*